[This opinion has been published in *Ohio Official Reports* at 69 Ohio St.3d 475.]

OFFICE OF DISCIPLINARY COUNSEL *v*. SMITH.

[Cite as *Disciplinary Counsel v. Smith*, 1994-Ohio-44.]

*Attorneys at law—Misconduct—Two-year suspension with credit for time served under interim suspension for felony conviction and no reinstatement to practice of law prior to the termination of federal probation—Conviction of theft of government property over $100.*

(No. 94-490—Submitted April 19, 1994—Decided June 22, 1994.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 93-36.

———————————

{¶ 1} On January 19, 1993, the United States District Court for the Eastern District of Michigan convicted respondent, Robert Smith III of Warrensville Heights, Ohio, Attorney Registration No. 0025381, upon his guilty plea, of theft of government property over $100 in violation of Section 641, Title 18, U.S.Code. The court sentenced respondent to three years' probation, one hundred and eighty days of home confinement, and five hundred hours' community service, and ordered him to pay the Department of Justice $2,000 in restitution. On April 7, 1993, this court indefinitely suspended respondent from the practice of law pursuant to Gov.Bar R. V(5)(A)(3) (interim suspension for felony conviction).

{¶ 2} In a complaint filed on June 21, 1993, relator, Office of Disciplinary Counsel, charged in a single count that respondent had violated DR 1-102(A)(3) (illegal conduct involving moral turpitude), 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and 1-102(A)(6) (any other conduct that adversely reflects on one's fitness to practice law). An evidentiary hearing on the matter was held before a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") on December 17, 1993.

**{¶ 3}** The parties stipulated to the panel that the Federal Bureau of Investigation ("FBI") had received information that Detroit drug dealers were being assisted by members of the Detroit Police Department in the delivery of drugs and the laundering of drug money. On May 19, 1991, during a meeting with Willie Volsan and an undercover FBI agent, respondent, at that time an assistant federal public defender with the Federal Public Defender's Office in Cleveland, stated that he could possibly provide the agent with information concerning which drug dealers were under federal suspicion. At the conclusion of the meeting, respondent accepted an envelope from the agent which contained $2,000 in cash. Respondent's federal conviction for theft of government property was based upon the May 19, 1991 meeting.

**{¶ 4}** The parties stipulated and the panel found that respondent's conduct violated DR 1-102(A)(3), 1-102(A)(4), and 1-102(A)(6). Respondent subsequently presented testimonial and documentary evidence in mitigation at the hearing before the panel. According to respondent, he was introduced to Volsan by his father, who knew that respondent wanted to eventually enter private practice. Respondent believed that when he travelled to the Detroit area on May 19, 1991, he was going to meet an individual who Volsan knew needed criminal representation, would pay expense money for the trip from Cleveland, and would possibly pay respondent a lucrative retainer. Respondent's purpose in attending the meeting was to ultimately retain a client so that he would be able to enter private practice. During the meeting, respondent was intimidated by Volsan and the agent, who had talked about "tak[ing] care" of anyone who informed on them. When respondent accepted the envelope containing the money, the agent said "[h]ere's two," which respondent understood to refer to $200 to cover his expenses in travelling to the Detroit area. After returning to Cleveland, when he discovered that the envelope actually contained $2,000, respondent telephoned Volsan and asked about returning the money because respondent had decided not to get the information requested by the

agent. When Volsan told respondent that he "didn't get any money," respondent kept the money and ultimately used it for family expenses following his federal indictment and the loss of his federal job. Respondent never acted upon the request at the May 19, 1991 meeting to acquire information concerning drug dealers from the Federal Public Defender's Office's computer system.

{¶ 5} Respondent, in compliance with his federal sentence, paid $2,000 in restitution to the federal government, and at the date of the hearing before the panel, had completed three hundred hours of community service.

{¶ 6} Several individuals, including attorneys, law school professors, a reverend, and respondent's wife, noted respondent's reputation for honesty and character and requested his ultimate reinstatement to practice law. The panel found a letter from Lynn A. Helland, the Assistant United States Attorney primarily in charge of the prosecution of respondent's federal case, to be most persuasive. Helland stated in the letter:

"I do not believe that Mr. Smith was involved in prior wrongdoing with Mr. Volsan. I do not regard Mr. Smith as the instigator of the May 19 meeting with the undercover agent. Mr. Smith seems to be like several other defendants we had in this case, generally law-abiding people who, nonetheless, quickly and easily succumbed to Mr. Volsan's request that they become involved in serious crime. The possibility exists that Mr. Smith was not fully informed by Mr. Volsan before attending the meeting. However, if that is true then I cannot explain why, once the tenor of the meeting became clear, Mr. Smith went along with the criminal goals rather than abandoning them.

"I consider Mr. Smith's conduct to be antithetical to that which we expect of an attorney. However, because I believe that this was an isolated incident, that he was not the instigator and in fact, may not have been fully informed of the meeting's purpose in advance, and because Mr. Smith did not act on the agreement that he made with the undercover agent, I do not think that this incident should

automatically terminate his legal career. Rather, I think that Mr. Smith should have the opportunity, after a suspension of suitable length, to be readmitted to the practice of law."

{¶ 7} Relator recommended that respondent be indefinitely suspended from the practice of law, whereas respondent recommended a two-year suspension with no credit for time served from his April 7, 1993 suspension. The panel recommended a two-year suspension with no credit for time already served.

{¶ 8} The board adopted the findings of fact and conclusions of law of the panel. However, after "considering the extraordinary circumstances of this case and the findings in mitigation," the board recommended that respondent be given a two-year suspension with credit for time served. The board further recommended that respondent not be reinstated to practice law until his federal probation had terminated and that costs be taxed to respondent.

_____

*Geoffrey Stern*, Disciplinary Counsel, and *Sally Ann Steuk*, Assistant Disciplinary Counsel, for relator.

*Koblentz & Koblentz*, *Richard S. Koblentz* and *Peter A. Russell*, for respondent.

_____

**Per Curiam.**

{¶ 9} We concur in the findings and recommendation of the board. Accordingly, Robert Smith III is hereby suspended from the practice of law for two years, and he is to be credited for the time he has served under our order of April 7, 1993. Additionally, respondent is not to be reinstated to the practice of law prior to the termination of his federal probation. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK and PFEIFER, JJ., concur.

F.E. SWEENEY, J., dissents and would indefinitely suspend respondent from the practice of law.

_____