TOLEDO BAR ASSOCIATION *v.* NELLER.

[Cite as *Toledo Bar Assn. v. Neller,*
98 Ohio St.3d 314, 2003-Ohio-774.]

(No. 2002–1775—Submitted January 8, 2003—Decided March 5, 2003.)

---

**Per Curiam.**

{¶ 1} Respondent, Richard M. Neller of Toledo, Ohio, Attorney Registration No. 0018855, was admitted to the practice of law in Ohio in 1972. On October 28, 1997, we suspended respondent's license for an interim period pursuant to Gov.Bar R. V(5)(A)(4) upon receiving notice that he had been convicted of five felonies. *In re Neller* (1997), 80 Ohio St.3d 1439, 685 N.E.2d 779.

{¶ 2} On April 8, 2002, relator, Toledo Bar Association, filed a complaint charging respondent with violations of the Code of Professional Responsibility.[1] A panel of the Board of Commissioners on Grievances and Discipline heard the cause and, based on comprehensive stipulations and other evidence, made the following findings.

{¶ 3} In November 1996, respondent was convicted of one count of conspiracy to distribute cocaine, marijuana, and heroin in violation of Sections 846 and 841(b)(1)(A), Title 21, U.S.Code, and four counts of unlawful use of a communication facility in violation of Sections 843(b) and (d), Title 21, U.S.Code.[2] He was sentenced to 70 months in prison on the conspiracy conviction and 48 months in prison on the remaining counts, with both sentences to run concurrently, to be followed by four years' supervised release on the conspiracy conviction and one year on the other counts, also to run concurrently. Respondent's convictions were affirmed on appeal.

{¶ 4} In July 2001, respondent was released from federal prison to a halfway house in Youngstown, at which time a local law firm employed him as a paralegal. In December 2001, respondent was released from the halfway house and returned to Toledo, the city in which he formerly practiced law. He is currently residing there under supervised release.

{¶ 5} The parties stipulated that respondent had violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), (5) (engaging in conduct prejudicial to the administration of justice), and (6) (engaging in conduct that adversely reflects on an attorney's fitness to practice law), and the panel found this misconduct. The panel also found clear and convincing evidence that respondent had violated DR 1–102(A)(3) (engaging in illegal conduct involving moral turpitude).

{¶ 6} In recommending a sanction, the panel considered that respondent had practiced criminal defense and had made significant contributions to the Toledo area as an outspoken advocate for Hispanic and other minorities. The panel also considered copious testimonials to the effect that respondent was an extremely competent, valued, and popular member of the legal community. Moreover, the panel was impressed that the federal judge who sentenced respondent had found him to be "less culpable" than the other defendants in his criminal trial.

{¶ 7} However, evidence revealed that respondent became involved in his co-defendants' drug activity while providing legal representation to the ringleader of

---

1. Respondent requested and relator agreed to stay formal complaint proceedings in this matter pending his release from the federal prison system.

2. According to the indictment, respondent used the telephone to facilitate the commission of acts in furtherance of the conspiracy.

the conspiracy and others. Because he used this special skill in committing his crimes, the federal sentencing judge found it necessary to enhance respondent's penalty and thereby offset the mitigating effect of his comparatively lower culpability. The panel members agreed with this assessment and resolved that since respondent had "crosse[d] the line from advisor and counselor to participant in a criminal enterprise," a severe sanction was required.

{¶ 8} The panel recommended that respondent be indefinitely suspended from the practice of law with no credit for time served. The board adopted the panel's findings of misconduct but rejected the recommended sanction as too lenient. The board instead recommended, based on the seriousness of his crimes and the damage he caused to the justice system, that respondent be permanently disbarred.

{¶ 9} On review, we adopt the findings that respondent violated DR 1–102(A)(3), (4), (5), and (6). According to the sentencing order of Judge John W. Potter of the United States District Court for the Northern District of Ohio, Western Division, respondent knew for many years that his client, Jose Rodriguez Jr., was engaged in the organized distribution of heroin, cocaine, and marijuana. During this time, respondent facilitated and promoted this conspiracy by advising Rodriguez on ways to avoid detection of his illegal activities and those of various coconspirators. For example, when a witness who claimed to have been beaten and stabbed by Rodriguez sought protective custody, respondent argued in court that law enforcement authorities had kidnapped her and held her against her will. Later, respondent coached the same woman in concocting a story to explain the statements she had made to officers while in protective custody because the story might provide a basis for suppressing her statements at trial.

{¶ 10} The facts underlying multiple felony convictions have persuaded us before to impose our strictest discipline, *Disciplinary Counsel v. Keith* (2001), 92 Ohio St.3d 404, 750 N.E.2d 1106, and they do so again today. Notwithstanding the outpouring of support from respondent's colleagues and acquaintances, no mitigating circumstances can undo the harm of respondent's integral role in this drug ring. Disbarment is the commensurate sanction. Respondent is, therefore, permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

---

Bonnie Rankin, Christopher Parker and Jonathan Cherry, for relator.

317

Charles Boss, for respondent.