DISCIPLINARY COUNSEL v. MARGOLIS.

[Cite as *Disciplinary Counsel v. Margolis*,
114 Ohio St.3d 165, 2007-Ohio-3607.]

(No. 2006–2331—Submitted March 13, 2007—Decided July 18, 2007.)

**Per Curiam.**

{¶ 1} Respondent, Loren Jonathan Margolis of Cleveland, Ohio, Attorney Registration No. 0007957, was admitted to the practice of law in Ohio in 1983. On August 2, 2005, we suspended respondent's license to practice for an interim period pursuant to Gov.Bar R. V(5)(A)(4) upon receiving notice of his felony convictions. *In re Margolis*, 106 Ohio St.3d 1472, 2005-Ohio-3914, 832 N.E.2d 57.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we now suspend respondent from practice for two years based on findings that he has been convicted on two counts of conspiracy to restrain trade in violation of Section 1, Title 15, U.S.Code (the Sherman Antitrust Act) and has thereby violated DR 1–102(A)(4) (prohibiting conduct involving fraud, deceit, dishonesty, or misrepresentation) and 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law). Respondent objects to the board's recommendation, arguing that he should be credited for the time his license has already been under suspension. On review, we find the cited violations of the Code of Professional Responsibility, overrule respondent's objection to the board's recommendation, and hold that the recommended sanction is appropriate.

{¶ 3} Relator, Disciplinary Counsel, and respondent stipulated to the facts and misconduct alleged in relator's complaint. After setting a hearing date to allow for respondent's release from the federal penal system, a three-member panel of the board heard the cause on August 10, 2006. The panel made findings of fact and conclusions of law and a recommendation, all of which the board adopted.

Misconduct

{¶ 4} A federal indictment charged respondent and his father-in-law with violations of the antitrust laws, alleging that they, in conspiracy with others in the

scrap-metal industry, had employed noncompetitive bidding and pricing practices to buy scrap metal for M. Weingold & Company ("the Weingold Company"), a business owned and operated by respondent's father-in-law.

{¶ 5} Respondent began working for the Weingold Company in 1989. He had no experience in the scrap-metal industry when hired, but he was a licensed real estate broker and had practiced real estate law, developing land through syndication and limited partnerships and acting as bond counsel, for six years beforehand. Respondent learned the business from his father-in-law, working as a company buyer and salesperson and overseeing operations while his father-in-law lived in Florida.

{¶ 6} Respondent was indicted on January 15, 2004, and he later agreed to plead guilty to the two antitrust crimes. Respondent cooperated in the government's prosecution of other defendants, and in April 2005, he reported his convictions to relator. The United States District Court, Northern Division, sentenced respondent on May 11, 2005, to five months in prison and five months in home confinement with electronic monitoring. The district court also fined respondent $700,000, ordered him to pay a special assessment of $200, and further ordered that he serve one year under supervised release.

{¶ 7} The indictment followed a long investigation that began at least as early as 1997 and of which respondent claimed to have no notice prior to March 2000. The indictment charged that from 1993 through 1999, respondent and his father-in-law conspired with other buyers to suppress and restrain competition by allocating among themselves the scrap-metal suppliers in Northeast Ohio and coordinating their bids for purchase so that none of the conspirators would take each others' suppliers. Through a process of complementary bidding and pricing, the conspirators denied suppliers in the scrap-metal industry the benefits of free and unfettered competition.

{¶ 8} Respondent completed his incarceration on December 23, 2005. He has paid all fines and assessments as ordered by the district court. On June 5, 2006, the court granted respondent's motion to terminate supervised release.

{¶ 9} Respondent's illegal activity and convictions constitute violations of DR 1–102(A)(4) and (6).

Sanction

{¶ 10} When imposing sanctions for attorney misconduct, we consider the duties violated, the actual or potential injury caused, the attorney's mental state, and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. Before making a final determination, we also weigh evidence of the aggravating and mitigating factors

listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 384, 726 N.E.2d 993.

{¶ 11} Respondent violated duties to the legal system and the general public by failing to conduct himself within the bounds of the law and to act in accordance with the highest standards of honesty and integrity. Respondent did not compromise any client's interest, but his misconduct financially harmed Ohio scrap-metal suppliers for years and affected "somewhere between $37,500,000 and $100,000,000" in bid rigging, according to the federal prosecutor at the sentencing hearing. His part in the underlying criminal conspiracy also manifests an intentional violation of the Disciplinary Rules.

{¶ 12} As for sanctions imposed in similar cases, the panel and board cited *Cincinnati Bar Assn. v. Hennekes,* 110 Ohio St.3d 108, 2006-Ohio-3669, 850 N.E.2d 1201, in which we suspended a lawyer's license for two years because he had been convicted of a felony offense for conspiring to distribute more than five kilograms of cocaine. We rejected the board recommendation to grant credit for the lawyer's earlier interim suspension as too lenient, observing that other lawyers had been permanently disbarred for violations of DR 1–102 that resulted in felony convictions. See, e.g., *Disciplinary Counsel v. Gallagher* (1998), 82 Ohio St.3d 51, 693 N.E.2d 1078, and *Toledo Bar Assn. v. Neller,* 98 Ohio St.3d 314, 2003-Ohio-774, 784 N.E.2d 689. We did not, however, disbar the lawyer in *Hennekes.* Based on the strength of the lawyer's mitigating evidence, including that he committed his misconduct by trying to help a close friend and had never possessed the cocaine or had any financial or other interest in the drug sale, that he had no prior record of professional discipline, that he deeply regretted his misconduct, and that he had made full and free disclosure during the disciplinary process, we concluded that the appropriate sanction was the two-year suspension without any retroactive credit.

{¶ 13} Respondent disputes the applicability of *Hennekes,* arguing that his conspiracy has little in common with a conspiracy to possess and distribute over ten pounds of cocaine. He also insists that the panel and board wrongly found that he did not accept responsibility for his misconduct, an aggravating factor under BCGD Proc.Reg. 10(B)(1)(g), and that they did not give sufficient weight to the mitigating evidence of his character and reputation, see BCGD Proc.Reg. 10(B)(2)(e). Respondent additionally disputes the finding that he did not candidly disclose the $200,000 annual salary and bonuses his father-in-law's company paid him.

Aggravating and Mitigating Factors

{¶ 14} Respondent had no disciplinary record prior to his felony convictions, he cooperated during the disciplinary proceedings, and he has already served his

sentence and paid his fines and court costs, all of which are mitigating factors under BCGD Proc.Reg. 10(B)(2)(a), (d), and (f). The panel and board also found that respondent had submitted "several" letters from supporters to show his good character and reputation apart from his misconduct. See BCGD Proc.Reg. 10(B)(2)(e).

{¶ 15} Respondent contests the panel's characterization of his written testimonials because he presented many more than "several" letters. In all, family, friends, employees, business associates, and other lawyers wrote 92 letters commending respondent personally and professionally. Thirty of these letters were written by customers of the Weingold Company.

{¶ 16} But the panel members found these opinions far less persuasive than their own assessment of respondent's integrity. The panel saw respondent, a former business major, lawyer, and real estate broker, as an experienced and sophisticated businessman who had been able to oversee the entire business operation in Ohio during his father-in-law's long winter absences. In fact, respondent knew of the noncompetition agreements between the conspirators and had personally complied with them in buying scrap metal for many years. The panel thus dismissed respondent's claim that he had never realized that the agreements were illegal.

{¶ 17} In his defense, respondent explained:

{¶ 18} "I obviously was involved in it. It obviously was improper. In many cases, I was brought into something that maybe had I better insight and knowledge and maybe thought it out further, I would have seen that it was improper.

{¶ 19} "And yet, on the other hand, I was brought into something that had been in place, these relationships had been in place. And at the time, I guess never having made that foray necessarily into this type of business before, I never participated with [two other scrap-metal buyers] in creating this understanding.

{¶ 20} "I guess I want to make sure that you understand that. I was not part of this. I never was in a meeting where I'd say, 'Well, you know, we're not going to buy * * *.' You know, this was an understanding. * * * This was something that was there.

{¶ 21} "And I, on one hand, kind of feel like the tail of a dog that got dragged along. On the other hand, I'm certainly 48 years old and a grown man. And although at the age of 31 I don't know that I knew better, I certainly think at the age of 48 I would look in a bit different light, especially in the light of having a little bit more business history behind me.

{¶ 22} "But I—I certainly feel that I wasn't the individual of the company at all who created anything like this or in the industry who created—created this. I

just kind of did what I was told to do and never really thought too much about the rights and wrongs of what I was doing."

{¶ 23} The panel and board considered this explanation as respondent's attempt to disclaim responsibility for his convictions and minimize his misconduct. As relator argues, we generally reject such efforts because "a guilty plea is not a ceremony of innocence, nor can it be rationalized in a subsequent disciplinary proceeding." *Disciplinary Counsel v. Mesi* (1995), 72 Ohio St.3d 45, 49, 647 N.E.2d 473. Moreover, "[u]nless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand." *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24.

{¶ 24} The panel in this case interpreted respondent's testimony as disingenuous. Although others may disagree, the board accepted that assessment. Deferring to the panel, so do we.

{¶ 25} But we cannot defer to the panel's conclusion that respondent attempted to avoid disclosing his annual compensation. The panel and board implied with this finding that respondent did not cooperate in the disciplinary proceeding, which is an aggravating factor under BCGD Proc.Reg. 10(B)(1)(e). Our review, however, revealed nothing to suggest that respondent dodged questions posed during the hearing about his salary at the Weingold Company.

Applicable Precedent

{¶ 26} Respondent cites ten cases in which we have granted credit for time served under an interim suspension for a felony conviction. Of these, six are distinguishable because the disciplined lawyers presented credible evidence of remorse and acceptance of responsibility, convincing us that the criminal conduct was a one-time, never-to-be-repeated mistake. *Cuyahoga Cty. Bar Assn. v. Garfield*, 109 Ohio St.3d 103, 2006-Ohio-1935, 846 N.E.2d 45 (18 months' suspension and credit for interim suspension ordered for lawyer convicted of federal bank fraud because he pledged an investment company's certificate of deposit as collateral for a $250,000 personal loan); *Disciplinary Counsel v. Blaszak*, 104 Ohio St.3d 330, 2004-Ohio-6593, 819 N.E.2d 689 (two-year suspension and credit for interim suspension ordered for lawyer convicted of selling testimony). *Akron Bar Assn. v. Peters* (2002), 94 Ohio St.3d 215, 761 N.E.2d 1038 (two-year suspension and credit for interim suspension ordered for lawyer convicted of the felony of having an illegal interest in a public contract and related crimes). *Disciplinary Counsel v. Dubyak* (2001), 92 Ohio St.3d 18, 748 N.E.2d 26 (two-year suspension, with six-month stay and credit for interim suspension ordered for lawyer who obtained confidential information through a $15,000 kickback and was then convicted of mail fraud for agreeing to pay a second kickback); *Disciplinary Counsel v. Petroff* (1999), 85 Ohio St.3d 396, 709 N.E.2d 111 (one-

year suspension and credit for interim suspension ordered for lawyer convicted of attempting to evade federal income taxes); and *Disciplinary Counsel v. Lash* (1993), 68 Ohio St.3d 12, 623 N.E.2d 28 (one-year suspension and credit for interim suspension ordered for lawyer convicted of bank fraud based on $10,000 misstatement of his income in mortgage loan application). We do not have that same conviction here that the misconduct was a one-time, out-of-character mistake.

{¶ 27} Moreover, in none of the cases cited by respondent were lawyers involved in criminal conduct for so long and with such huge financial implications as respondent was in the Weingold Company conspiracy. *Disciplinary Counsel v. Cook* (2000), 89 Ohio St.3d 80, 728 N.E.2d 1054 (six-month suspension with credit for interim suspension ordered for lawyer convicted of felony for writing purchase contracts with reckless disregard for the fact that the buyer intended to pay for the purchases with profits from illegal drug sales); *Dayton Bar Assn. v. Seall* (1998), 81 Ohio St.3d 280, 690 N.E.2d 1271 (one-year suspension with credit for interim suspension ordered for lawyer convicted of conspiracy to commit federal tax fraud), *Disciplinary Counsel v. Miller* (1997), 79 Ohio St.3d 115, 679 N.E.2d 1098 (one-year suspension with credit for interim suspension ordered for lawyer convicted of aiding and abetting the filing of false federal tax return); and *Disciplinary Counsel v. Smith* (1994), 69 Ohio St.3d 475, 633 N.E.2d 1117 (two-year suspension with credit for interim suspension ordered for lawyer convicted of theft of government property). For misconduct of such magnitude and absent compelling evidence of contrition, credit for an interim suspension is not appropriate.

{¶ 28} In refusing to grant retroactive credit for an interim suspension in *Hennekes,* we observed:

{¶ 29} " 'One of the fundamental tenets of the professional responsibility of a lawyer is that he should maintain a degree of personal and professional integrity that meets the highest standard. The integrity of the profession can be maintained only if the conduct of the individual attorney is above reproach. He should refrain from any illegal conduct. Anything short of this lessens public confidence in the legal profession—because obedience to the law exemplifies respect for the law.' " 110 Ohio St.3d 108, 850 N.E.2d 1201 ¶ 13, quoting *Cleveland Bar Assn. v. Stein* (1972), 29 Ohio St.2d 77, 81, 58 O.O.2d 151, 278 N.E.2d 670.

{¶ 30} This admonition is equally applicable here. Respondent is therefore suspended from the practice of law in Ohio for two years. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

Jonathan E. Coughlan, Disciplinary Counsel, and Carol A. Costa, for relator.

Koblentz & Koblentz, Richard S. Koblentz, and Craig J. Morice, for respondent.