MAHONING COUNTY BAR ASSOCIATION *v.* THEISLER.

[Cite as *Mahoning Cty. Bar Assn. v. Theisler,*

125 Ohio St.3d 144, 2010-Ohio-1472.]

*Attorneys at law — Misconduct — Violations of the Disciplinary Rules, including 98 felony convictions — Indefinite license suspension ordered.*

(No. 2009-1541 — Submitted November 18, 2009 — Decided April 8, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 05-012.

_____

**Per Curiam.**

{¶ 1} Respondent, Charles W. Theisler of Youngstown, Ohio, Attorney Registration No. 0062582, was admitted to the practice of law in Ohio in 1993. On October 27, 2005, we suspended respondent's license to practice for an interim period pursuant to Gov.Bar R. V(5)(A)(4) upon receiving notice that he had been convicted of a felony. See *In re Theisler*, 106 Ohio St.3d 1560, 2005-Ohio-5665, 836 N.E.2d 584. At that time, we ordered that the matter be referred to relator, Mahoning County Bar Association, for investigation and commencement of disciplinary proceedings. Id. Nearly a year later, this court found respondent in contempt of our 2005 order for failing to file an affidavit of compliance on or before November 28, 2005. *In re Theisler*, 110 Ohio St.3d 1483, 2006-Ohio-4877, 854 N.E.2d 210.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that as our final disposition in this case, we indefinitely suspend respondent's license to practice law without any credit for time served during the interim felony suspension. We accept the board's findings and conclusions that respondent violated ethical standards incumbent on Ohio lawyers. Therefore, we

indefinitely suspend respondent's license to practice law in Ohio, granting no credit for time served under the interim suspension.

**Misconduct**

{¶ 3} In addition to having been a licensed attorney, respondent was a licensed chiropractor.[1] After over 20 years of chiropractic practice in Youngstown, respondent became a licensed Ohio attorney in 1993. Five years later, respondent graduated from the Grace University School of Medicine in St. Kitts, but did not complete the United States Medical Licensing Examinations and therefore was never a licensed physician.

{¶ 4} Respondent associated himself with two medical doctors doing business under the name Pain Management Associates. After initially consulting medical doctors at Pain Management, patients returning for follow-up appointments would see respondent, who wrote prescriptions for them on a doctor's presigned blank prescription form.

{¶ 5} Ultimately, respondent was indicted by the grand jury on 118 counts relating to his activities at Pain Management Associates. The counts included engaging in a pattern of corrupt activity, drug trafficking, illegal processing of drug documents, and practicing medicine or surgery without a certificate. A jury found respondent guilty on 98 counts, and respondent served three years in prison.

{¶ 6} The Trumbull County Court of Appeals affirmed respondent's convictions and sentences. *State v. Theisler*, Trumbull App. No. 2005 T 0106, 2007-Ohio-213, ¶ 127. This court declined jurisdiction. *State v. Theisler*, 114 Ohio St.3d 1412, 2007 Ohio 2632, 867 N.E.2d 845. In addition, the Eleventh District Court of Appeals affirmed the trial court's denial of respondent's petition for postconviction relief. *State v. Theisler*, Trumbull App. No. 2009-T-0003, 2009-Ohio-6862, ¶ 33. Respondent's petition for a writ of habeas corpus was also

---

1. Respondent's chiropractic license was revoked as a result of his felony convictions.

denied. Respondent served his three-year term of imprisonment, which ended in September 2008, after which he was placed on probation. That order remains in effect until September 2011.

{¶ 7} After respondent's 2005 felony license suspension, we ordered that the matter be referred to relator for investigation. Relator charged respondent in an amended complaint with violating certain Disciplinary Rules of the Code of Professional Responsibility, including DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 1-102(A)(6) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 8} A three-member panel of the Board of Commissioners on Grievances and Discipline heard testimony at a hearing and considered the parties' joint stipulations. Respondent testified that during his employment with Pain Management Associates as a "medical assistant," he ceased providing chiropractic services. He also testified that prior to accepting the job, he had reviewed R.C. Chapter 4730 regarding physician assistants and former Ohio Adm.Code 4731-4-04, which addressed physician-assistant prohibitions. From that research, he erroneously concluded that he could perform medical examinations, give injections, and undertake any other clinical work that the physician might delegate to him under supervision. Respondent testified that he performed follow-up exams only and that he was not engaged in the practice of medicine. At the hearing, respondent admitted that he had failed to earn a certificate as a "medical assistant," although that option had been open to him.

{¶ 9} Based on the exhibits submitted and testimony at the hearing before it, the panel found by clear and convincing evidence that respondent had violated DR 1-102(A)(4), in that respondent's felony convictions demonstrated conduct involving dishonesty, fraud, deceit, or misrepresentation, and 1-

102(A)(6), in that respondent's convictions adversely reflected on his fitness to practice law.

{¶ 10} In addition, the panel issued findings of fact and conclusions of law and made a recommendation. The board adopted the panel's findings and the recommendation that we indefinitely suspend respondent's license to practice law without any credit for time served during the interim felony suspension. Respondent objected to the board's recommended sanction, arguing that it was too harsh, punishes respondent disproportionately to others, and is not necessary to protect the public.

**Sanction**

{¶ 11} When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties violated by the lawyer in question and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. Before making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). See *Lake Cty. Bar Assn. v. Troy,* 121 Ohio St.3d 51, 2009-Ohio-502, 901 N.E.2d 809, ¶ 11.

{¶ 12} We have identified respondent's breaches of his duties to his clients, the legal profession, and the judicial system. In respondent's case, the parties stipulated to and the board found two aggravating factors: respondent's misconduct involved a pattern of misconduct, BCGD Proc.Reg. 10(B)(1)(c), and multiple offenses, 10(B)(1)(d).

{¶ 13} The parties stipulated to the following five mitigating factors: no prior disciplinary violations, BCGD Proc.Reg. 10(B)(2)(a), a lack of dishonest or selfish motive, 10(B)(2)(b), absence of harm to victims, and his aversion to committing further offenses. Furthermore, the parties stipulated that respondent

had cooperated fully with relator and the panel during the investigation and disciplinary proceedings, BCGD Proc.Reg. 10(B)(2)(d), and that respondent has received and served criminal sanctions for his illegal activity, 10(B)(2)(f). However, the panel also noted its doubts about the stipulation that no dishonest motive was involved, and it further noted that no letters attesting to respondent's good character had been submitted.

{¶ 14} Relator recommended an indefinite suspension with no credit given for the interim suspension. Respondent proposed a two-year suspension with credit for the interim suspension, or in the event that the court imposes an indefinite suspension, that credit be given for time served.

{¶ 15} The board, echoing the panel, noted that respondent showed remorse during the hearing and that he has already paid a debt to society by virtue of his incarceration and his continued probation. The board found that no medical patients were harmed, but it could not discount that respondent has 98 felony convictions. The board adopted the panel's recommendation that respondent's license to practice law be indefinitely suspended without credit for the interim felony suspension.

## Review

{¶ 16} In determining the appropriate sanction for professional misconduct, this court considers the duties violated, the actual or potential injury caused, the lawyer's mental state, existence of aggravated or mitigating circumstances, and sanctions imposed in similar cases. *Columbus Bar Assn. v. Linnen*, 111 Ohio St.3d 507, 2006-Ohio-5480, 857 N.E.2d 539, at ¶ 25.

{¶ 17} As noted in the board's report, the applicable sanction for serious felony convictions has been either disbarment or indefinite suspension. The board recommends that we indefinitely suspend respondent's license with no credit for time served on his interim suspension. After reviewing relevant cases outlined below, we accept this recommendation.

**{¶ 18}** Regarding sanctions in similar cases, we find *Disciplinary Counsel v. LoDico*, 118 Ohio St.3d 316, 2008-Ohio-2465, 888 N.E.2d 1097, to be instructive. *LoDico* involved an interim suspension based on the respondent's felony conviction of carrying a concealed weapon. This court imposed an indefinite suspension with no credit for the interim suspension, despite mitigating factors similar to those in this case. Specifically, *LoDico* involved stipulated facts, a cooperative respondent, and completion of a court-ordered sentence. LoDico did have a prior disciplinary violation for unprofessional conduct that had warranted an 18-month suspension with six months stayed on conditions. However, LoDico was convicted of only one fourth-degree felony, whereas respondent was convicted of 98 felonies, ranging from the first to fifth degree.

**{¶ 19}** Moreover, in *Linnen*, 111 Ohio St.3d 507, 2006-Ohio-5480, 857 N.E.2d 539, the attorney had been convicted of 53 misdemeanors: two first-degree misdemeanor counts of sexual imposition, one first-degree misdemeanor count of aggravated trespass, 11 third-degree misdemeanor counts of sexual imposition, and 39 fourth-degree misdemeanor counts of public indecency. Id. at ¶ 5. Unlike respondent's, none of Linnen's crimes were felonies, and this court indefinitely suspended Linnen's license.

**{¶ 20}** Respondent makes much of the fact that he did not believe at the time that what he was doing when working as a physician's assistant at Pain Management Associates was wrong, and he relies heavily on *Disciplinary Counsel v. Margolis*, 114 Ohio St.3d 165, 2007-Ohio-3607, 870 N.E.2d 1158. Margolis was convicted of two counts of conspiracy to restrain trade. Like respondent, Margolis was found to have violated DR 1-102(A)(4) and 1-102(A)(6). Id. at ¶ 9. Margolis was suspended from the practice of law for two years. Id. at ¶ 30. Unlike in this case, however, the board had recommended a two-year suspension. Id. at ¶ 2. Also, Margolis submitted 92 letters commending him personally and professionally, whereas no letters attesting to respondent's

good character were submitted to the board here. Moreover, the board noted, "The Panel has doubts about accepting the stipulation that there was no dishonest motive here." Furthermore, Margolis was convicted of two antitrust crimes as opposed to respondent's 98 crimes. Respondent's reliance on *Margolis*, as well as the other cases cited in his objections to the board's report and recommendation, is misplaced.

{¶ 21} Respondent's 98 felonies, including aggravated trafficking in drugs, illegal processing of drug documents, engaging in a pattern of corrupt activity, and practicing medicine or surgery without a certificate, warrant an indefinite license suspension without credit for time served. We are compelled to agree with relator that "a lawyer who (allegedly) researches an issue and, in reliance on that research, is convicted of 98 felonies, is as much of a threat to future potential clients as a lawyer who researches the law and knows his conduct is wrong but nevertheless commits the felonies."

{¶ 22} Accordingly, we accept the board's recommendation. Respondent is therefore indefinitely suspended from the practice of law in Ohio without credit for time served during the interim felony suspension imposed on October 27, 2005. Respondent is also required to complete his term of probation before applying for readmission to the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J.,[2] and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Ronald E. Slipski and David Comstock Jr., for relator.

---

2. The late Chief Justice Thomas J. Moyer participated in the deliberations in, and the final resolution of, this case prior to his death.

John B. Juhasz, for respondent.

_____