CINCINNATI BAR ASSOCIATION *v.* POWERS.

[Cite as *Cincinnati Bar Assn. v. Powers,*
119 Ohio St.3d 473, 2008-Ohio-4785.]

(No. 2008-0396—Submitted May 21, 2008—Decided September 25, 2008.)

**Per Curiam.**

{¶ 1} We must determine in this case the appropriate sanction for a lawyer who (1) as part owner, oversaw operations of a title company that defrauded various financial institutions and (2) then pleaded guilty to two felonies for his part in the scheme. Despite the breadth of the underlying fraudulent conduct, the Board of Commissioners on Grievances and Discipline recommended only the indefinite suspension of the lawyer's license to practice law. For these egregious violations of the Code of Professional Responsibility, we order his permanent disbarment.

{¶ 2} Respondent, Donald M. Powers Jr. of Cincinnati, Ohio, Attorney Registration No. 0067728, was admitted to the practice of law in Ohio in 1997. On January 27, 2006, we suspended respondent's license to practice law on an interim basis, pursuant to Gov.Bar R. V(5)(A)(4), upon receiving notice of his felony convictions for making a material false statement in a loan application, a violation of Section 1014, Title 18, U.S.Code, and filing a false income tax return, a

violation of Section 7206(1), Title 26, U.S.Code. See *In re Powers,* 108 Ohio St.3d 1424, 2006-Ohio-289, 841 N.E.2d 786. Our decision in this case completes the disciplinary review process.

{¶ 3} Relator, Cincinnati Bar Association, charged respondent with three violations of the Disciplinary Rules: DR 1–102(A)(3) (prohibiting illegal conduct involving moral turpitude), 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), and 1–102(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law). A panel of the board heard the case, found the cited misconduct, and recommended the indefinite suspension. The board adopted the panel's findings of misconduct and recommendation.

{¶ 4} Relator has objected to the board's report, arguing in the main that the board unduly minimized the gravity of respondent's convictions and the fraudulent conduct that precipitated them. Relator claims that in adopting the panel report, the board relied too much on respondent's exculpatory testimony and too little on the wrongdoing to which he admitted both in stipulations for the hearing and in pleading guilty to his crimes. We sustain these objections.

## Misconduct

{¶ 5} To describe the scope of the fraudulent conspiracy in which respondent engaged, the parties stipulated:

{¶ 6} 1. "Respondent and his wife operated Premier Land Title Agency in Glendale, Ohio, from September 2000 to July 2003."

{¶ 7} 2. "During this period, Respondent was a participant (along with several others) in a scheme involving 'flipping' low value homes in the greater Cincinnati, Ohio area."

{¶ 8} 3. "The 'flipping' scheme involved buying a piece of real estate for a low value, recruiting a buyer for the property who may not otherwise be able to afford property, and creating false documents, including pay stubs, W–2 forms, bank statements and employment verification for the potential buyer. Next, a falsely inflated appraisal of the property would be obtained, and a false loan package would be submitted to the bank or lender in order to obtain a highly inflated loan."

{¶ 9} 4. "Premier Land Title Agency, of which Respondent was an owner, participated in the closing of 310 loans involved in this scheme. Respondent was aware of some of the fictitious and/or fraudulent appraisals that were submitted to financial institutions in furtherance of this scheme."

{¶ 10} 5. "Additionally, Respondent and/or Premier Land Title Agency took part in acts which defrauded various federally insured financial institutions in the execution of the 'flipping' scheme by knowingly submitting false Housing and

Urban Development (HUD) forms to the financial institutions in support of a loan application. In signing numerous HUD forms, Respondent falsely certified that the buyer had brought a down payment to the closing, which he knew not to be true."

{¶ 11} 6. "Respondent further participated by acting as both the title agent and the seller in connection with five properties involved in the 'flipping' scheme. Respondent purchased one such property located at 1794 Carll Street in Cincinnati for $37,000 and sold it three months later for $78,000. Also, in furtherance of the conspiracy, Respondent purchased property located at 2283 Loth in Cincinnati for $6,000 and sold it six months later for $110,000. In both of these transactions, Respondent signed HUD statements certifying that the buyers brought over $11,000 to each of the closings as down payments, but in fact, the buyers did not provide any funds as down payments."

{¶ 12} 7. "Respondent has admitted that due to his and Premier's fraudulent activity, various financial and lending institutions have suffered an actual or intended loss of $3,492,217.59."

{¶ 13} 8. "Respondent additionally willfully filed false individual income tax returns with the Internal Revenue Service for the years 2001 and 2002. He failed to report portions of the payments received from the fraudulent loan proceeds and from others involved in the 'flipping' scheme."

{¶ 14} 9. "On February 1, 2005, Respondent pled guilty in United States District Court, Southern District of Ohio, Western Division, to making a material false statement in a loan application in violation of 18 U.S.C. § 1014, and to filing a false income tax return, in violation of 26 U.S.C. § 7206(1)."

{¶ 15} 10. "On October 31, 2005, Respondent was sentenced to imprisonment for 28 months on the first count and 36 months on the second count, to be served concurrently * * *."

{¶ 16} Respondent was paroled from prison in August 2007. His release allowed him to testify before the hearing panel. At that time, he was living in a halfway house in Cincinnati.

{¶ 17} By overseeing an operation that fabricated closing documents on over 300 loans, causing lenders to lose nearly $3.5 million, and then filing false income tax returns that concealed his profit, respondent unquestionably violated DR 1-102(A)(3), (4), and (6).

## Sanction

{¶ 18} Respondent has filed nothing in opposition to relator's request for permanent disbarment, and the board, in adopting the panel's report, offered little support for the recommendation to indefinitely suspend. As relator argues, the board largely understated the proportions of respondent's misconduct, depict-

ing a far less objectionable scenario than the one to which he admitted. Of the entire enterprise, the board summarized:

{¶ 19} "Respondent, along with other persons, did partner in the purchase of two residential properties in Cincinnati. Those homes were purchased for fairly low cost and sold within just a few months at a rather large profit. Respondent failed to accurately report the income obtained from these sales to the Internal Revenue Service."

{¶ 20} Respondent, as the licensee and part owner of the title company in each transaction, facilitated as many as 310 real estate closings in which agents supplied fictitious appraisals, some of which respondent specifically knew to be fabricated. Pay stubs, W–2 forms, bank statements, and records that verified a buyer's employment were routinely falsified to close these deals. Respondent personally signed numerous HUD forms, certifying that the buyer had remitted the required down payment, a certification that he knew to be false. Moreover, the "rather large" profit that respondent realized in two of five transactions, during which he acted as title agent and seller of exceedingly overvalued property, totaled $41,000 in one case and $104,000 in the other. Through these devices, respondent's real estate "flipping" scam garnered a colossal return.

{¶ 21} The board exercised lenience in this case, relying on the panel's trust in respondent's "extremely compelling and credible" testimony, in which he acknowledged wrongdoing while insinuating his "limited involvement in the criminal and fraudulent conduct." This, however, is not the time to defer to a panel's credibility determination, as is our usual practice. Cf. *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8. We are the ultimate arbiters in disciplinary proceedings, *Disciplinary Counsel v. Furth* (2001), 93 Ohio St.3d 173, 181, 754 N.E.2d 219; *Ohio State Bar Assn. v. Reid* (1999), 85 Ohio St.3d 327, 330, 708 N.E.2d 193, and we do not accept respondent's asserted inattention to what he claims were the machinations of others at the direction of his ex-wife and a former business associate.

{¶ 22} Long before his stipulations, respondent pleaded guilty in October 2004 to his crimes and admitted other improprieties in federal court to obtain favorable sentencing terms. As relator observes, respondent cannot now deny the extent of his culpability to evade our strictest sanction in the disciplinary proceeding ensuing from those convictions. *Disciplinary Counsel v. Margolis*, 114 Ohio St.3d 165, 2007-Ohio-3607, 870 N.E.2d 1158, ¶ 23. "[A] guilty plea is not a ceremony of innocence, nor can it be rationalized in a subsequent disciplinary proceeding." *Disciplinary Counsel v. Mesi* (1995), 72 Ohio St.3d 45, 49, 647 N.E.2d 473.

{¶ 23} The statement of facts respondent signed in pleading guilty confirmed the facts we have already enumerated, albeit with one addition. Beyond his

falsifications of HUD–1 settlement statements, respondent also knew that buyers were paid financial kickbacks for their participation. Though HUD–1 settlement statement forms indicated that the buyer had brought the down payment to closing, the statement of facts from the plea agreement revealed the following:

{¶ 24} "Mr. Powers knew that the buyer did not bring the down payment, but rather someone else involved in the scheme brought the down payment. Moreover, Mr. Powers was aware that the buyer often received a 'kickback' outside of the closing, which was not disclosed to the lender. Thus, Mr. Powers aided others in a scheme to defraud financial institutions."

{¶ 25} Misconduct of this magnitude warrants disbarment. In *Disciplinary Counsel v. Bein*, 105 Ohio St.3d 62, 2004-Ohio-7012, 822 N.E.2d 358, ¶ 13–14, we disbarred a lawyer convicted of felonies for conspiracy to engage in the interstate transportation of stolen property and conspiracy to conduct financial transactions for stolen goods. The lawyer had conspired with others in an illegal commercial enterprise involving the interstate transportation and sale of stolen over-the-counter pharmaceuticals, health and beauty aids, and sundry items such as film and batteries.

{¶ 26} As here, mitigating factors such as the lawyer's lack of a prior disciplinary record, admission to wrongdoing, and imposition of other penalties existed in that case, and the lawyer also attempted to minimize his role in the illegal conspiracy leading to his convictions. *Bein*, 105 Ohio St.3d 62, 2004-Ohio-7012, 822 N.E.2d 358, ¶ 9. But given the lawyer's longtime commitment to and profit from the criminal conduct, we were not dissuaded from ordering his permanent disbarment. We wrote:

{¶ 27} "An attorney who turns to crime and is convicted of theft offenses should be disbarred. See *Cincinnati Bar Assn. v. Blake,* 100 Ohio St.3d 298, 2003-Ohio-5755, 798 N.E.2d 610, ¶ 7. To be sure, respondent contends that he was not solely responsible for the financial losses incurred by the retail businesses that were the victims of his crimes, but he cannot deny that he continued to participate in those crimes over several years and that the total losses from the conspiracy reached into the hundreds of thousands of dollars.

{¶ 28} "A lawyer who engages in the kind of criminal conduct committed by respondent violates the duty to maintain personal honesty and integrity, which is one of the most basic professional obligations owed by lawyers to the public. Respondent's misconduct was harmful not only to the businesses affected but also to the legal profession, which is and ought to be a high calling dedicated to the service of clients and the public good." *Bein* at ¶ 12–13.

{¶ 29} Because respondent's ethical breaches are at least as damaging to the legal profession and public as those committed in *Bein*, disbarment is appropri-

ate. We therefore permanently disbar respondent from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

Franklin A. Klaine Jr. and E. Hanlin Bavely, for relator.

Hardin, Lazarus, Lewis & Marks, L.L.C., and Edward G. Marks, for respondent.