Richard Cordray, Attorney General, and M. Scott Criss, Assistant Attorney General, for appellee.

DISCIPLINARY COUNSEL *v.* KELLY.

[Cite as *Disciplinary Counsel v. Kelly,*
121 Ohio St.3d 39, 2009-Ohio-317.]

(No. 2008–1198—Submitted October 1, 2008—Decided February 4, 2009.)

_____

**Per Curiam.**

{¶ 1} Respondent, Kristen Lynn Kelly of Fairborn, Ohio, Attorney Registration No. 0064964, was admitted to the practice of law in Ohio in 1995. The Board of Commissioners on Grievances and Discipline recommends that we indefinitely suspend respondent's license to practice, based on findings that she misappropriated funds from a county agency and impermissibly practiced law while employed as a domestic relations court magistrate. We agree that respondent committed professional misconduct as found by the board and that an indefinite suspension is appropriate.

{¶ 2} Relator, Disciplinary Counsel, charged respondent in a two-count complaint with violations of the Disciplinary Rules of the Code of Professional Responsibility and the Canons of the Code of Judicial Conduct. A panel of the board heard the case, including respondent's stipulations, made findings of misconduct, and recommended a two-year suspension of respondent's license, with the last six months stayed on the condition that respondent receive mental health treatment. The board adopted the panel's findings of misconduct but recommended that respondent be indefinitely suspended from practice "based on the positions of trust that she held and the seriousness of the repeated misconduct."

{¶ 3} Respondent objects to the board's recommendation. She urges us to defer to the panel and argues that an indefinite suspension would be unduly harsh. Respondent has offered much mitigating evidence; however, to protect the public, we order an indefinite suspension of her license to practice.

## Misconduct

### Count I

{¶ 4} From late 2004 through August 2006, respondent served as treasurer for the Greene County Humane Society ("GCHS"), an unpaid position. As treasurer, she maintained three GCHS bank accounts and had authority to use a GCHS credit card. She paid bills, made bank deposits, and prepared the annual IRS 990 tax form.

{¶ 5} Soon after becoming treasurer, respondent transferred GCHS funds from Bank One to Countywide Federal Credit Union, where she kept her personal bank accounts, and deposited the money in new accounts to which only she had access. Between January 2005 and August 2006, respondent misused her authority as treasurer and misappropriated over $40,000 from GCHS, which she used to pay her family's living expenses. Respondent concealed the theft by preparing 11 false reports to present at monthly GCHS board meetings.

{¶ 6} Respondent's misappropriation of funds violated DR 1–102(A)(4) (prohibiting conduct involving fraud, deceit, dishonesty, or misrepresentation) and 1–102(A)(6) (prohibiting conduct that adversely reflects on the lawyer's fitness to

practice law) and Canon 2 (requiring magistrates, as judges, to respect and comply with the law and act at all times in a manner that promotes public confidence in the integrity of the judiciary).

### Count II

{¶ 7} From August 2000 through October 2006, respondent served as a full-time magistrate in the Greene County Common Pleas Court, Domestic Relations Division, eventually becoming the chief magistrate. During the same period, respondent regularly provided volunteer legal services to GCHS, providing advice, drafting animal-adoption contracts, filing pleadings in animal-cruelty cases, and appearing in court. Respondent thereby violated Canon 4(F) (generally prohibiting magistrates, as judges, from practicing law).

### Sanction

{¶ 8} When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties the respondent breached and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. We also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Cleveland Bar Assn. v. Glatki* (2000), 88 Ohio St.3d 381, 384, 726 N.E.2d 993; *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

### Deference to the Panel

{¶ 9} Arguing in favor of the panel's recommended two-year suspension with six months stayed, respondent underscores the evidence presented in mitigation. She cites her prior unblemished professional record, the fact that she made full restitution, her full disclosure and acknowledgement of wrongdoing, her good character apart from this misconduct, and a claimed mental disability (obsessive compulsive disorder). See BCGD Proc.Reg. 10(B)(2)(a), (c), (d), (e), and (g). She insists that these mitigating circumstances outweigh the relevant aggravating factors of acting with dishonest and selfish motives and engaging in a pattern of misconduct, see BCGD Proc.Reg. 10(B)(1)(b) and (c), and offset the gravity of her infractions so that, in accordance with relevant precedent, we should decline the board's recommendation of an indefinite suspension.

{¶ 10} In aid of this argument, respondent urges us to accept the panel's recommendation, citing a line of cases in which we noted our usual deference to

the hearing panel's better perspective in terms of assessing witness credibility. See, e.g., *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8; *Columbus Bar Assn. v. Willette*, 117 Ohio St.3d 433, 2008-Ohio-1198, 884 N.E.2d 581, ¶ 29. But as relator observes, the facts in this case are not in dispute. Inasmuch as no witness's testimony, including that of respondent, has been challenged as unreliable, cases in which we have deferred to a panel's credibility determinations do not apply.

{¶ 11} Moreover, it is true that we ordinarily accept the panel's and board's conclusions as to the propriety of an attorney's conduct or the appropriate sanction, and to that extent, our decisions reflect deference to their expertise. But as the ultimate arbiter of misconduct and sanctions in disciplinary cases, this court is not bound by factual and legal conclusions drawn by either the panel or the board. See *Cincinnati Bar Assn. v. Powers*, 119 Ohio St.3d 473, 2008-Ohio-4785, 895 N.E.2d 172, ¶ 21. Accord *Disciplinary Counsel v. Furth* (2001), 93 Ohio St.3d 173, 181, 754 N.E.2d 219; *Ohio State Bar Assn. v. Reid* (1999), 85 Ohio St.3d 327, 330, 708 N.E.2d 193. Thus, we need not defer to either's conclusions and remain free to exercise our independent judgment as to evidentiary weight and applicable law.

*An Indefinite Suspension Is Appropriate*

{¶ 12} Respondent has long been an advocate for animal protection and welfare and since 1997 has devoted much time as a GCHS volunteer. She, along with her former husband, is also an adoptive and foster parent and has shown great dedication to these commitments as well. As the panel and board observed, these passions are laudable; however, they "strained Respondent's financial resources as well as her physical and mental wellbeing and have contributed in part to the misconduct at issue in this case."

{¶ 13} Respondent took advantage of a position of trust to subsidize her passions and at the same time live well beyond her means. In embezzling over $40,000, she repeatedly transferred funds from GCHS bank accounts, withdrew GCHS funds in cash and by check, and made charges on GCHS credit cards, incurring overdraft and credit card fees. She then repeatedly falsified the financial reports by which GCHS board members might have discovered the theft.

{¶ 14} Respondent breached duties owed to the public, DR 1–102(A)(4) and (6), and the legal system, Canons 2 and 4(F). Her acts and omissions laid waste to the fundamentals of integrity and trustworthiness that members of the legal profession are bound by oath to embody. And because she was president of the Greene County Bar Association and employed as the chief domestic relations magistrate when her transgressions came to light, respondent's ethical breaches tarnished the legal system all the more.

{¶ 15} Respondent claims that she had always intended to repay the stolen funds and had voluntarily reported her misappropriations to the GCHS president and relator. But as relator points out, respondent did not disclose her theft to the president until a GCHS investigation made discovery imminent. At that time, respondent deposited in a GCHS bank account a partial repayment of $4,800, a fraction of what she had stolen, supposedly because she believed that she had taken just $10,000 without authority. Respondent testified that she had intended to repay GCHS by depositing funds purporting to be personal donations, a plan that would have required additional misrepresentations aimed at avoiding detection.

{¶ 16} Respondent did report her misconduct to relator but first entered a confidential settlement with GCHS in which she agreed to repay $38,121.09 and the agency agreed not to press criminal charges. When respondent did report her misconduct, she intentionally minimized the extent of her wrongdoing. Respondent revealed that she had "spent unauthorized expenditures" but without mentioning the $42,000 figure that by that time had been determined through investigation and audit.

{¶ 17} "The continuing public confidence in the judicial system and the bar requires that the strictest discipline be imposed in misappropriation cases." *Cleveland Bar Assn. v. Belock* (1998), 82 Ohio St.3d 98, 100, 694 N.E.2d 897. For this reason, disbarment is the presumptive disciplinary measure for acts of misappropriation and the starting point for determining the required sanction. *Cleveland Bar Assn. v. Dixon*, 95 Ohio St.3d 490, 2002-Ohio-2490, 769 N.E.2d 816, ¶ 15. We at times temper that disposition, however, and give weight to a board recommendation of a lesser sanction when significant mitigating circumstances exist. *Disciplinary Counsel v. Wise* (1999), 85 Ohio St.3d 169, 171, 707 N.E.2d 852, citing *Disciplinary Counsel v. Kurtz* (1998), 82 Ohio St.3d 55, 693 N.E.2d 1080.

{¶ 18} We exercise this leniency here by imposing an indefinite suspension, which allows respondent the opportunity to regain her license to practice. Respondent has unquestionably violated the public trust by embezzling funds. She also has violated her duty as a magistrate to refrain from the practice of law. But through evidence of her philanthropic pursuits, her reputation for providing competent legal services, and her efforts on behalf of the bar, respondent has established that she may be able to recover her ethical orientation and serve in a professional capacity. See *Ohio State Bar Assn. v. Johnson*, 96 Ohio St.3d 192, 2002-Ohio-3998, 772 N.E.2d 1184 (indefinite suspension from practice, not disbarment, ordered for attorney convicted of extortion for acts committed while he served as a state senator).

{¶ 19} Respondent cites *Johnson*, which stands for the proposition that even though a lawyer has engaged in acts as reprehensible as extortion, a solid record of good public work and a previously unblemished professional record may warrant an indefinite suspension to allow the lawyer time to show rehabilitation, and after the two-year period prescribed by Gov.Bar R. V(10)(B), to petition for reinstatement. Here, proof of respondent's rehabilitation will be essential before she may be granted the privilege of practicing law again. Despite her professed contrition, the facts of her theft and the elements of the hearing testimony revealed to the panel and board that she does not fully realize the seriousness of her transgressions. Nevertheless, respondent's good record preceding her misconduct suggests the possibility that eventually she may be capable of contributing professionally to her community in the future.

{¶ 20} We therefore indefinitely suspend respondent from the practice of law in Ohio. Respondent may not petition for reinstatement of her license before two years from the date of our order. To petition for reinstatement at that time, respondent must show, in addition to fulfilling the requirements of Gov.Bar R. V(10)(C) though (E), that she has received appropriate treatment for her asserted diagnosis of obsessive compulsive disorder, has been certified by a qualified health-care professional as able to competently and ethically practice law, under specified conditions if necessary, and has made full restitution of the embezzled funds. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., dissents and would suspend respondent from the practice of law in Ohio for two years.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

Kegler, Brown, Hill & Ritter Co., L.P.A, Geoffrey Stern, and Rasheeda Khan, for respondent.