DISCIPLINARY COUNSEL *v.* GITTINGER.

[Cite as *Disciplinary Counsel v. Gittinger*,

125 Ohio St.3d 467, 2010-Ohio-1830.]

*Attorneys — Misconduct — Convictions on federal charges of bank fraud and money laundering — Indefinite suspension with credit for time served under interim felony suspension.*

(No. 2009-2290 — Submitted February 17, 2010 — Decided May 4, 2010.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 09-031.

_____

**Per Curiam.**

{¶ 1} Respondent, Steven C. Gittinger, last known business address in Cincinnati, Ohio, Attorney Registration No. 0011887, was admitted to the practice of law in Ohio in 1984. On October 16, 2008, we suspended respondent's license to practice on an interim basis pursuant to Gov.Bar R. V(5)(A)(4) upon receiving notice that he had been convicted of a felony. *In re Gittinger*, 119 Ohio St.3d 1491, 2008-Ohio-5339, 894 N.E.2d 1247.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we now indefinitely suspend respondent from practice retroactively to October 16, 2008, on the condition, however, that respondent cannot petition for reinstatement until the order in his criminal case permits. The board made this recommendation based on findings that respondent had engaged in federal bank fraud and money laundering, causing a loss between $400,000 and $1,000,000. We agree that respondent violated ethical duties incumbent upon Ohio attorneys and adopt the board's recommendations.

**{¶ 3}** Relator, Disciplinary Counsel, charged respondent with violating three Disciplinary Rules of the Code of Professional Responsibility: DR 1-102(A)(3) (a lawyer shall not engage in illegal conduct involving moral turpitude), 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonestly, fraud, deceit, or misrepresentation), and 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on his fitness to practice law).

**{¶ 4}** A panel appointed by the board heard the case on the parties' joint exhibits and written stipulations regarding the facts and the rules violated. The parties proposed to the panel that respondent receive an 18-month suspension from the practice of law beginning on October 16, 2008, the date on which respondent was placed on interim felony suspension under Gov.Bar R. V(5). However, the panel recommended that respondent be suspended indefinitely, "retroactive to October 16, 2008, thus permitting him to apply for restoration under the rules and show his fitness for [the] practice of law when the terms of his supervised release are wholly satisfied." The board adopted the panel's report and recommended sanction.

## Misconduct

**{¶ 5}** The parties stipulated to the respondent's violations of DR 1-102(A)(3), 1-102(A)(4), and 1-102(A)(6), and to the following facts:

**{¶ 6}** "1. Respondent, Steven Charles Gittinger, was admitted to the practice of law in the State of Ohio on May 7, 1984. Respondent is subject to the Code of Professional Responsibility and the Rules for the Government of the Bar of Ohio.

**{¶ 7}** "2. On October 16, 2008, the Supreme Court of Ohio suspended respondent from the practice of law on an interim basis due to his August 5, 2008 felony convictions, which are described herein.

**{¶ 8}** "3. Respondent's interim felony suspension is still in effect.

**{¶ 9}** "4. In 2003, respondent was a principal of a business in Cincinnati, Ohio known as Classic Title Agency, Inc., which owned Classic Title Agency, LLC ('Classic Title') a title insurance agency licensed in the State of Ohio and formed in 2004.

**{¶ 10}** "5. Among the business activities that Classic Title performed were services to close real estate sales.

**{¶ 11}** "6. In 2003 respondent received business and made money for performing closings on behalf of Toby Groves, as well as a business that Groves owned known as Groves Funding Corporation ('Groves Funding').

**{¶ 12}** "7. Beginning by at least June 20, 2003, Groves was engaging in a scheme to defraud federally insured financial institutions as follows:

**{¶ 13}** "a. Groves Funding was engaged in the business of loaning moneys to individuals who would use the funds to purchase residences.

**{¶ 14}** "b. Groves Funding obtained the moneys to make these loans from a line of credit obtained from Regions Bank, a federally insured financial Institution.

**{¶ 15}** "c. After making loans to buyers of real estate, Groves Funding would sell these loans to other federally insured financial institutions.

**{¶ 16}** "d. Both Regions Bank, when it funded the line of credit, and the financial institutions that bought loans from Groves Funding relied upon the information in the real estate closing packages to make their business decisions related to Groves Funding.

**{¶ 17}** "8. During the period between June 2003 and continuing through 2005 Groves falsified material information on real estate closing documents such as loan application forms and HUD-1 Settlement Statements.

**{¶ 18}** "9. Among the occasions where Groves provided materially false information to lenders were a series of transactions relating to Groves' purchase of his own residence at 5416 Edwardsville Road, Clarksville, Ohio.

**{¶ 19}** "10. On June 20, 2003, Groves purchased the Edwardsville Road property, but caused Kevin Moore, a Groves Funding employee, to sign the paperwork and act as if Moore was the purchaser of the property.

**{¶ 20}** "11. The June 20th purchase price of the Edwardsville Road property was $615,000 and the loan used to pay the seller was supplied by Groves Funding.

**{¶ 21}** "12. After June 20, 2003, Groves Funding sold the June 20, 2003 loan to Washington Mutual Bank, a federally insured financial institution.

**{¶ 22}** "13. On September 3, 2003, Groves conducted and caused to be conducted another purported sale of the Edwardsville Road property from Moore to Groves.

**{¶ 23}** "14. Groves solicited the assistance of respondent to complete the September 2003 closing through respondent's Classic Title business.

**{¶ 24}** "15. Before the September 2003 closing, respondent and Groves agreed to make the following misrepresentations on the closing documents, which were then forwarded to financial institutions that funded loans for Groves.

**{¶ 25}** "a. The closing documents, including the HUD-1 Settlement Statement, indicated that Moore sold the Edwardsville Road property to Groves for $815,000 and that Groves provided a down payment of $168,236.36, making the transaction appear to lenders as a loan of eighty percent of the purchase price.

**{¶ 26}** "b. In reality, Groves Funding was supplying a loan for the entire purchase price and Groves obtained the property without any down payment towards the purchase price.

**{¶ 27}** "c. Respondent also caused the production of a Classic Title check in the amount of $168,236.36 made payable to Moore.

**{¶ 28}** "d. Moore never received the $168,236.36 and the check was later voided.

4

**{¶ 29}** "16. As a part of the purported September 3, 2003 sale of the Edwardsville Road property, Groves Funding received credit for a new loan from its line of credit funded by Regions Bank.

**{¶ 30}** "17. Respondent and Groves caused an interstate wire transfer of funds in an amount of $649,872.35 from Regions Bank to Washington Mutual Bank for the purpose of paying off the original loan sold by Groves Funding after the September 3, 2003 sale where Groves used Moore to buy the Edwardsville Road property.

**{¶ 31}** "18. This wire transfer of funds was a financial transaction done with the proceeds from the bank fraud.

**{¶ 32}** "19. Any specific amount of loss attributable to respondent as a result of his actions in the matters undetermined.

**{¶ 33}** "20. On April 18, 2008, an Information was filed in the United States District Court for the Southern District of Ohio, Western Division under Criminal Case No. 1:08-CR-47 charging respondent with one count of conspiracy to commit bank fraud, a felony violation of 18 U.S.C. §1349, and one count of money laundering, a felony violation of 18 U.S.C. §1957.

**{¶ 34}** "21. On May 1, 2008, an arraignment and formal plea hearing was held before Judge Herman Weber in Criminal Case No. 1:08-CR-47.

**{¶ 35}** "22. At the May 1, 2008 hearing, respondent waived his rights to prosecution by indictment and the court accepted respondent's guilty pleas to both counts in the Information.

**{¶ 36}** "23. On August 5, 2008, respondent appeared before Judge Weber for sentencing.

**{¶ 37}** "24. At the August 5, 2008 sentencing hearing, respondent received an aggregate twelve-month and one-day sentence followed by an aggregate five-year period of supervised release. In addition, respondent was ordered to pay an aggregate fine of $6,000 plus a $200 special assessment fee.

**{¶ 38}** "25. Following his sentence, respondent was placed in the custody of the Bureau of Prisons.

**{¶ 39}** "26. Respondent served his prison sentence at the FCI Gilmer Satellite Camp, P.O. Box 7000, Glenville, WV 26351, and has completed his sentence."

**{¶ 40}** We accept these stipulations and find that respondent violated DR 1-102(A)(3), 1-102(A)(4), and 1-102(A)(6).

### Sanction

**{¶ 41}** In determining the appropriate sanction for an attorney's misconduct, we consider sanctions imposed in similar cases and whether aggravating or mitigating factors under Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.") warrant a harsher or more lenient disposition. *Disciplinary Counsel v. Bennett*, 124 Ohio St.3d 314, 2010-Ohio-313, 921 N.E.2d 1064, ¶ 23. The parties stipulated to the mitigating factors that respondent (1) lacks a prior disciplinary record, (2) has fully cooperated in these proceedings, and (3) accepts responsibility and expresses remorse for his misconduct. BCGD Proc.Reg. 10(B)(2)(a) and (d). Respondent also offered positive character evidence. BCGD Proc.Reg. 10(B)(2)(e). Respondent fulfilled his pledge to the panel to become compliant with all requirements for continuing legal education, consistent with the terms of his interim felony suspension. Respondent has amended his attorney-registration status from "inactive" to "active."

**{¶ 42}** However, respondent's denial that any loss resulted from his conduct does not provide any mitigation and is in fact an aggravating factor. BCGD Proc.Reg. 10(B)(1)(g) (refusal to acknowledge wrongful nature of conduct). Respondent's assertion is contrary to the stipulation before the panel that he accepts responsibility for his actions and with his statement in the plea

agreement in the United States district court that the amount of the loss attributable to him exceeds $400,000. In this regard, respondent's denial of harm suggests that he does not accept responsibility for or acknowledge the wrongful nature of his conduct. BCGD Proc.Reg. 10(B)(1)(g).

{¶ 43} Moreover, respondent's witness at the hearing is further indication that the wrongfulness of the conduct is not acknowledged. Although he denied that he was excusing respondent's misconduct, the witness seemed to condone or justify it as an understandable lapse of attention, and he supported respondent's position that no one had suffered a loss. BCGD Proc.Reg. 10(B)(1)(g). Respondent's criminal conduct also evidences a motive to defraud others in an apparent effort to retain a lucrative business client, thus manifesting dishonesty and selfishness, which are aggravating factors under BCGD Proc.Reg. 10(B)(1)(b).

{¶ 44} As we noted above, the parties stipulated to an 18-month suspension. The panel and board, however, recommended that respondent's license be suspended indefinitely, retroactively to the date respondent was placed on interim felony suspension, and that respondent could apply for reinstatement upon satisfaction of his five-year period of supervised release from his criminal case.

{¶ 45} We agree with the recommendations made by the panel and the board. A key term of the sentence in respondent's criminal case is that he will be on supervised release for a period of five years upon his release from imprisonment. The sentence further provides that during the supervised release, respondent "shall not be employed in the title business, either directly or indirectly, and shall not practice law during the term of supervised release." At the hearing, the panel expressed concern that the adoption of the parties' stipulated 18-month suspension would create an inconsistency between the disciplinary sanction and the conditions imposed in the supervised release. In

support of the 18-month suspension stipulation, respondent submitted an affidavit stating that his probation officer would petition the district court to lift the condition prohibiting respondent from practicing law after respondent had served one year of his postrelease supervision. We find that indefinite suspension is the proper sanction in these circumstances. Imposing an indefinite suspension will avoid inconsistency between this court's disciplinary sanction and the federal court's criminal sentence and will allow for proper resolution of the underlying criminal case prior to any application for reinstatement to the practice of law.

{¶ 46} We also find that crediting respondent for his interim suspension is appropriate. In *Disciplinary Counsel v. Lash* (1993)*, 68 Ohio St.3d 12, 623 N.E.2d 28*, respondent pleaded guilty to a single count of bank fraud for overstating his income to obtain a loan. We adopted the panel and board's recommendation that respondent be suspended from the practice of law for one year, with the suspension retroactive to the date of his interim suspension. In *Cuyahoga Cty. Bar Assn. v. Garfield*, 109 Ohio St.3d 103, 2006-Ohio-1935, 846 N.E.2d 45, respondent was convicted of a single count of felony bank fraud. Garfield was a managing director of an investment company and had pledged a certificate of deposit of the company as collateral for a $250,000 loan to obtain funds for his personal use. He was suspended from the practice of law for 18 months with credit for time served under the interim suspension.

{¶ 47} Respondent's misconduct is similar to the misconduct in *Lash* and *Garfield.* All three respondents were suspended on an interim basis after their convictions on federal bank-fraud charges. All three cases involve one-time violations. All three involve significant mitigating evidence, including attestations to the respondents' good reputations in the community, indicating that the misconduct was out of character and unlikely to recur. Another factor favoring credit in this case is the fact that respondent did not realize any tangible personal gain or profit from his misconduct. Moreover, respondent did not

engage in a lengthy pattern of misconduct or cause grave harm to others. Compare *Disciplinary Counsel* v. *Margolis,* 114 Ohio St.3d 165, 2007-Ohio-3607, 870 N.E.2d 1158 (no credit for time served for attorney who engaged in antitrust conspiracy lasting several years and causing may millions in damages to others); *Erie-Huron Counties* Bar *Assn. v. Evans,* 123 Ohio St.3d 103, 2009-Ohio-4146, 914 N.E.2d 381 (no credit for time served for attorney who committed multiple disciplinary violations over several years with serious resulting harm to clients).

{¶ 48} Based on the foregoing, we accept the recommendation of the panel, the board, and the parties that respondent receives credit for the time served under his interim suspension.

{¶ 49} Respondent is therefore indefinitely suspended from the practice of law in Ohio. Respondent may petition for reinstatement once he has either completed, or otherwise satisfied, all the conditions imposed by the federal court and his underlying criminal case is resolved. We also grant credit to respondent for the time he has served under the October 16, 2008 interim suspension, which credit may be applied against the two-year period that respondent must wait before petitioning for reinstatement under Gov.Bar R. V(10)(B). Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., not participating.

————————————

Jonathan E. Coughlan, Disciplinary Counsel, and Phillip A. King, Assistant Disciplinary Counsel, for relator.

Robert W. Cettel, for respondent.

————————————