**DISCIPLINARY COUNSEL *v.* PETERSON.**

[Cite as *Disciplinary Counsel v. Peterson,* 135 Ohio St.3d 110,

2012-Ohio-5719.]

*Attorney misconduct, including stealing funds from a client and improperly entering into a business transaction with a client—Indefinite suspension.*

(No. 2012-0996—Submitted September 11, 2012—Decided December 6, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-018.

_____

**CUPP, J.**

{¶ 1} Respondent, Paul Nickolas Peterson of Chagrin Falls, Ohio, Attorney Registration No. 0075730, was admitted to the practice of law in Ohio in 2002. In 2011, relator, disciplinary counsel, filed a complaint alleging multiple violations of the Rules of Professional Conduct. The complaint alleges that Peterson (1) stole funds from a corporate client, (2) improperly entered into a business transaction with the client without properly advising the client of the possible conflicts and without obtaining the client's informed consent, and (3) failed to safeguard the client's funds. A panel of the Board of Commissioners on Grievances and Discipline reviewed the evidence in this case and based upon the evidence and the stipulations of the parties, recommended that Peterson be indefinitely suspended from the practice of law in Ohio with no credit for the period Peterson was subject to the interim felony suspension issued by this court in 2010, which stemmed from the misconduct underlying this case. The board adopted the panel's findings of fact and conclusions of law, but recommends a sanction of disbarment. We adopt the panel's recommendation of indefinite suspension with specified conditions.

**Stipulated Misconduct and Rule Violations**

{¶ 2} On March 15, 2012, relator and Peterson filed agreed stipulations as to misconduct and violations of the Ohio Rules of Professional Conduct.

*1. Gabriel Representation*

{¶ 3} In February 2008, Peterson prepared documents to create a limited-liability corporation entitled LB2 on behalf of his client Linda Mae Gabriel. The purpose of LB2 was to buy, refurbish, and sell homes to supplement Gabriel's income. Peterson and Gabriel were signatories on the bank account for LB2.

{¶ 4} In 2008 and 2009, Peterson paid some of his personal expenses from the LB2 account, including his credit-card bills and expenses for personal trips. During this same time period, Peterson, without authorization, paid himself $1,200 a month from the LB2 account.

{¶ 5} The panel and the board found by clear and convincing evidence, and we agree, that Peterson violated Prof.Cond.R. 1.7(a)(2) (a lawyer's continuation of representation of a client creates a conflict if there is substantial risk that the lawyer's ability to carry out an appropriate course of action will be materially limited by the lawyer's own personal interests), 1.8(a)(1) (a lawyer shall not enter into a business transaction with a client unless the terms are fair and reasonable and are fully disclosed to the client in writing), 1.8(a)(2) (a lawyer shall not enter into a business transaction with a client unless the client is advised in writing to seek and is given a reasonable opportunity to seek the advice of independent counsel), 1.8(a)(3) (a lawyer shall not enter into a business transaction with a client unless the client gives written informed consent concerning the lawyer's role in the transaction), and 1.15(a) (a lawyer shall hold the property of the client separate from the lawyer's own property and keep the client's appropriately safeguarded).

*2. Felony Conviction*

**{¶ 6}** In March 2010, Gabriel filed a civil action against Peterson alleging legal malpractice, fraudulent misrepresentation, and civil theft.

**{¶ 7}** In November 2010, Peterson pled no contest to a charge of fourth-degree felony theft, pursuant to allegations contained in an information filed in September 2010 in the Cuyahoga County Court of Common Pleas that alleged that Peterson had stolen funds from a corporate client between April 2008 and March 2009 in the amount of at least $5,000 and less than $100,000, in violation of R.C. 2913.02(a)(3). Peterson was sentenced to 30 days in jail and five years of community control and was ordered to pay restitution in the amount of $80,000.

**{¶ 8}** We suspended Peterson from the practice of law for an interim period due to the felony conviction. 127 Ohio St.3d 1453, 2010-Ohio-5974, 938 N.E.2d 40.

**{¶ 9}** Peterson stipulated that his conduct violated Prof.Cond.R. 8.4(b) (a lawyer shall not commit an illegal act that reflects adversely on his honesty or trustworthiness), 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (a lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law). The panel and the board found by clear and convincing evidence, and we agree, that Peterson violated the Rules of Professional Conduct as stipulated.

**{¶ 10}** The board considered this matter on June 8, 2012, and adopted the panel's findings of fact and conclusion of law. The board, however, amended the sanction recommended by the panel and recommended instead that Peterson be permanently disbarred from the practice of law in the state of Ohio. The board further recommended that the cost of these proceedings be taxed to Peterson.

**Sanction**

**{¶ 11}** In considering the appropriate sanction for Peterson's misconduct, the board weighed the aggravating and mitigating factors listed in BCGD

Proc.Reg. 10(B). The board also considered sanctions imposed in similar cases. *See Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. It determined that disbarment was the appropriate sanction. Peterson filed objections and argues that the court should instead impose an indefinite suspension. We sustain his objection to the sanction.

### I. Aggravation

{¶ 12} In aggravation, the board found that Peterson had a dishonest and selfish motive and that the victim of his misconduct was vulnerable and had suffered harm.

### II. Mitigation

{¶ 13} The parties have stipulated that three BCGD Proc.Reg. 10(B)(2) mitigating factors are present. First, Peterson cooperated in the disciplinary investigation. Second, he self-reported his misconduct to the Office of Disciplinary Counsel. Third, Peterson has received other penalties or sanctions.

{¶ 14} Further, the board found that Peterson has made the restitution ordered by the court upon his theft conviction. The amount of restitution made was determined by agreement in resolving the criminal matter.

{¶ 15} Additionally, we find that the following mitigating factors are present. Peterson has accepted responsibility for his wrongdoing and has expressed remorse for his actions. He has not been previously disciplined. "Our precedent indicates that a prior interim felony suspension has not heretofore been considered as a prior disciplinary offense." *Disciplinary Counsel v. Cantrell*, 130 Ohio St.3d 46, 2011-Ohio-4554, 955 N.E.2d 950, ¶ 16, citing *Disciplinary Counsel v. Ulinski*, 106 Ohio St.3d 53, 2005-Ohio-3673, 831 N.E.2d 425, ¶ 1 and 14 (acknowledging an interim felony suspension but determining that no prior disciplinary offenses had occurred); *Disciplinary Counsel v. O'Malley*, 126 Ohio St.3d 443, 2010-Ohio-3802, 935 N.E.2d 5, ¶ 1 and 10 (same); *Disciplinary Counsel v. Gittinger*, 125 Ohio St.3d 467, 2010-Ohio-1830, 929 N.E.2d 410, ¶ 1

and 41 (same); *Disciplinary Counsel v. Andrews*, 124 Ohio St.3d 523, 2010-Ohio-931, 924 N.E.2d 829, ¶ 1 and 18 (same); *Disciplinary Counsel v. Butler*, 128 Ohio St.3d 319, 2011-Ohio-236, 943 N.E.2d 1025, ¶ 1 and 3 (same). Finally, Peterson has demonstrated that aside from the present matter, he has a reputation in the community for being of good character.

**{¶ 16}** Additionally, Peterson asserts that his mental disability should be considered as a mitigating factor. BCGD Proc.Reg. 10(B)(2)(g) provides that a mental disability may be considered in mitigation of sanction where there has been (i) a diagnosis of a mental disability by a qualified health-care professional, (ii) a determination that the mental disability contributed to cause the misconduct, (iii) a sustained period of successful treatment, and (iv) a prognosis from a qualified health-care professional that the attorney will be able to return to competent, ethical professional practice under specified conditions.

**{¶ 17}** In support of his assertion, Peterson offered the testimony and reports of his treating health-care professionals, Jane Miller Hellwig, Ph.D., a licensed psychologist who began treating Peterson for recurrent depression in March 2006, and Alan Castro, M.D., a psychiatrist to whom Dr. Hellwig referred Peterson in January 2007, when his treatment required medication. Dr. Castro also diagnosed Peterson with depression. In May 2011, Dr. Castro diagnosed Peterson with bipolar mood disorder.

**{¶ 18}** Peterson did not disclose his legal problems to either Dr. Hellwig or Dr. Castro until after the theft was discovered. Moreover, even after disclosing his legal problems, Peterson failed to disclose the true nature of his misconduct to Drs. Hellwig and Castro. Upon learning the actual extent of Peterson's actions, Dr. Hellwig opined that it was possible that Peterson's mental condition contributed to his misconduct. Dr. Castro's opinion was also in terms of possibilities.

### III.  An Indefinite Suspension Is Appropriate

[I]t is true that we ordinarily accept the panel's and board's conclusions as to the propriety of an attorney's conduct or the appropriate sanction, and to that extent, our decisions reflect deference to their expertise.   But as the ultimate arbiter of misconduct and sanctions in disciplinary cases, this court is not bound by factual and legal conclusions drawn by either the panel or the board.  See *Cincinnati Bar Assn v. Powers*, 119 Ohio St.3d 473, 2008-Ohio-4785, 895 N.E.2d 172, ¶ 21.  Accord *Disciplinary Counsel v. Furth* (2001), 93 Ohio St.3d 173, 181, 754 N.E.2d 219; *Ohio State Bar Assn. v. Reid* (1999), 85 Ohio St.3d 327, 330, 708 N.E.2d 193. Thus, we need not defer to either's conclusions and remain free to exercise our independent judgment as to evidentiary weight and applicable law.

*Disciplinary Counsel v. Kelly*, 121 Ohio St.3d 39, 2009-Ohio-317, 901 N.E.2d 798, ¶ 11.

{¶ 19} While the board's recommendation of "permanent disbarment is the presumptive disciplinary measure for acts of misappropriation and the starting point for determining the required sanction," *id.* at ¶ 17, citing *Cleveland Bar Assn. v. Dixon*, 95 Ohio St.3d 490, 2002-Ohio-2490, 769 N.E.2d 816, ¶ 15, we are able to temper that disposition by giving a lesser sanction when significant mitigating circumstances exist. *Id.,* citing *Disciplinary Counsel v. Wise*, 85 Ohio St.3d 169, 171, 707 N.E.2d 852 (1999), citing *Disciplinary Counsel v. Kurtz*, 82 Ohio St.3d 55, 693 N.E.2d 1080 (1998).

{¶ 20} The following cases provide guidance on the question whether the lesser sanction of an indefinite suspension is appropriate here.  In *Disciplinary*

*Counsel v. Harris,* 96 Ohio St.3d 138, 2002-Ohio-2988, 772 N.E.2d 621*,* Caesar M. Harris, a solo practitioner, converted money entrusted to him by an institutionalized client. *Id*. at ¶ 1. We imposed an indefinite suspension upon Harris, finding that there were sufficient mitigating factors to weigh against permanent disbarment. *Id.* at ¶ 6. Specifically, we noted:

> [I]n addition to the board's recommendation [of indefinite suspension], we have before us an honorably discharged veteran who has been a member of the bar for twenty-seven years and has never been disciplined for professional misconduct before. [Harris] has been active his entire life in the Open Door Missionary Baptist Church. His pastor and several professional acquaintances, including past and present members of the judiciary, submitted letters or gave testimony to assure us that [Harris] was dedicated and trustworthy. The probate court thought that some of [Harris'] efforts constituted legitimate professional services.

*Id.*

{¶ 21} In *Kelly*, 121 Ohio St.3d 39, 2009-Ohio-317, 901 N.E.2d 798, Kristen Lynn Kelly served as treasurer for the Greene County Humane Society ("GCHS"), an unpaid position. *Id.* at ¶ 1. She transferred GCHS funds to the bank where she kept her personal accounts and deposited the funds into new accounts to which only she had access. *Id.* at ¶ 4-5. Kelly misused her authority as treasurer and misappropriated over $40,000 from GCHS, which she used to pay her family's living expenses. *Id.* at ¶ 5.[1]

---

1. Kelly also engaged in practicing law while employed as a magistrate, a violation of Canon 4(F) of the Code of Judicial Conduct.

**{¶ 22}** We rejected the panel's recommendation of a two-year suspension, with six months stayed, and imposed an indefinite suspension. In so doing, we found that significant mitigating circumstances existed that overcame the presumptive disciplinary measure of disbarment for acts of misappropriation.

> Respondent has unquestionably violated the public trust by embezzling funds. * * * But through evidence of her philanthropic pursuits, her reputation for providing competent legal services, and her efforts on behalf of the bar, respondent has established that she may be able to recover her ethical orientation and serve in a professional capacity. See *Ohio State Bar Assn. v. Johnson*, 96 Ohio St.3d 192, 2002-Ohio-3998, 772 N.E.2d 1184 (indefinite suspension from practice, not disbarment, ordered for attorney convicted of extortion for acts committed while he served as a state senator). * * * [Kelly's] good record preceding her misconduct suggests the possibility that eventually she may be capable of contributing professionally to her community in the future.

*Id.* at ¶ 18-19.

**{¶ 23}** In *Disciplinary Counsel v. Muntean*, 127 Ohio St.3d 427, 2010-Ohio-6133, 940 N.E.2d 942, Christopher Peter Muntean was treasurer of the Summit County Court Appointed Special Advocates ("CASA") board. *Id.* at ¶ 1. In that capacity, he began using CASA funds for his personal expenses, and within a few months, he had converted nearly $50,000 to his own use. *Id.* at ¶ 5. He was charged with, and pled guilty to, one count of grand theft, a fourth-degree felony. *Id.* at ¶ 2 and 5.

**{¶ 24}** In imposing an indefinite suspension, we found that Muntean shared many of the same characteristics as Kelly.

> [Muntean] has made complete restitution and fully understands the gravity of his misconduct. [He] immediately reported his violation and is taking active measures to address the underlying issues [a diagnosis of mild depression] that may have precipitated his actions. [Muntean] was very well perceived within the legal community, and the sentencing judge described him as in the midst of a "brilliant career." As in *Kelly*, we believe that [Muntean] may eventually be able to establish the ability to practice law both competently and ethically, and we decline to permanently foreclose that opportunity.

*Id.* at ¶ 12.

{¶ 25} The mitigating factors in this matter strongly correlate to those in *Harris, Kelly,* and *Muntean.* Peterson self-reported his misconduct and has accepted responsibility for and understands the gravity of his actions. He has made complete restitution to Gabriel. Also, Peterson is taking active measures to address his diagnosis of bipolar mood disorder that may have precipitated his actions. Other sanctions have been imposed upon Peterson, including a 30-day jail sentence. Finally, Peterson submitted letters and testimony from members of his community to assure us that he is hard-working, honest, of high moral character, and willing to serve others. Accordingly, we determine that an indefinite suspension with conditions for reinstatement is appropriate in this case.

## Disposition

{¶ 26} Paul Nickolas Peterson is therefore indefinitely suspended from the practice of law in Ohio. He may not petition for reinstatement of his license before two years from the date of our order. In his petition for reinstatement, Peterson must show, in addition to fulfilling the requirements of Gov.Bar R.

V(10)(C) though (E), that he has received appropriate treatment for his diagnosis of bipolar mood disorder and that a qualified psychiatrist has certified that he is able to return to the competent, ethical, and professional practice of law.  Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Carol A. Costa, Assistant Disciplinary Counsel, for relator.

McGinty, Hilow, and Spellacy, Co., L.P.A., and Mary L. Cibella, for respondent.

_____