**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Bucio,* **Slip Opinion No. 2017-Ohio-8709.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-8709

DISCIPLINARY COUNSEL *v.* BUCIO.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Bucio,* Slip Opinion No. 2017-Ohio-8709.]**

*Attorneys—Misconduct—Misappropriation of client funds—Sufficient mitigation outweighs presumptive sanction of disbarment—Indefinite suspension with no credit for time served under interim felony suspension.*

(No. 2017-0800—Submitted July 11, 2017—Decided November 29, 2017.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2015-053.

_____

**Per Curiam**.

{¶ 1} Respondent, Christopher Ramon Bucio, of Urbana, Ohio, Attorney Registration No. 0076517, was admitted to the practice of law in Ohio in 2003. In January 2017, we suspended Bucio's license on an interim basis after receiving notice of his felony conviction for unauthorized use of a client's property in

violation of R.C. 2913.04. *In re Bucio*, 149 Ohio St.3d 1243, 2017-Ohio-29, 75 N.E.2d 1257.

{¶ 2} In 2015, relator, disciplinary counsel, charged Bucio with professional misconduct based on the facts that led to his felony conviction. Bucio stipulated to most of the charges against him, and after a hearing, a three-member panel of the Board of Professional Conduct found that he violated the professional-conduct rules and recommended that he serve a two-year suspension, with the second year stayed on conditions and with no credit for time served under his interim felony suspension. Upon review, the board adopted the panel's findings of misconduct but increased the recommended sanction, concluding that an indefinite suspension, with no credit for time served, was the appropriate sanction for Bucio's misconduct. The board also recommends that we prohibit him from petitioning for reinstatement until he successfully completes or is released from his five-year community-control sanction imposed as part of his criminal sentence. Bucio did not object to the board's report and recommendation.

{¶ 3} Based on our independent review, we adopt the parties' stipulations of fact and misconduct and agree with the board's recommended sanction.

**Misconduct**

{¶ 4} On August 18, 2010, local law-enforcement authorities arrested Linda Heuker after finding a marijuana-growing operation in the basement of her home. Heuker's adult children met with Bucio about potentially representing their mother, and he visited her in jail. Heuker advised Bucio that she did not have enough cash for attorney fees but that she would be willing to sell a 22-acre parcel of farmland to pay for representation. Bucio suggested that she transfer the property to him and that he would take care of the details, and she agreed to the proposal. At all relevant times, Heuker believed that she would transfer her land to Bucio as a retainer for his legal services and that he would thereafter sell the land on her behalf, deduct his

attorney fees and expenses from the sale proceeds, and provide her with the remaining balance from the sale.

{¶ 5} While in jail, Heuker also signed a fee agreement requiring her to pay Bucio's law firm a flat fee for each stage of the representation. Specifically, the agreement provided that she would pay $30,000 for representation during the pretrial stage of her case, $40,000 for representation during the trial stage, and $10,000 for representation during the motion stage. On the first page of the agreement, a handwritten notation indicated that Heuker would transfer her land in exchange for full payment of legal fees and expenses. Heuker later claimed that when she signed the fee agreement, she saw only the signature page and was not given an opportunity to review the other pages in the document.

{¶ 6} Bucio thereafter worked out a plea agreement with the county prosecuting attorney, and on September 1, 2010, about two weeks after the police arrested her, Heuker pled guilty to a third-degree felony and was released from jail.

{¶ 7} Around the same time, Heuker signed a deed transferring her farmland to Bucio's law firm. Before entering into the transaction, Bucio failed to comply with the professional-conduct rule designed to protect a client against his or her attorney's potential overreaching when the attorney enters into a business transaction with the client. For example, Bucio failed to fully disclose in writing the terms on which he was acquiring an interest in Heuker's property, he failed to advise her of the desirability of seeking independent legal counsel before entering into the transaction or give her a reasonable opportunity to seek such advice, and he failed to obtain her informed consent to the essential terms of the transaction and his role in it. Consequently, the parties stipulated that he violated Prof.Cond.R. 1.8(a) (prohibiting a lawyer from entering into a business transaction with a client unless specific conditions are met).

{¶ 8} By October 2010, Bucio's law firm had transferred Heuker's farmland to a real-estate company owned by the law-firm partners, which then sold

the land for $135,000. After paying various expenses—including Heuker's outstanding mortgage on the land and a judgment against her from a related municipal-court case—the real-estate company netted $127,767.02 from the sale, and through various real-estate transactions, the company transferred that money to Bucio. However, neither Bucio nor anyone associated with his law firm advised Heuker of the sale or the sale price of her land. Based on this conduct, the parties stipulated that Bucio violated Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter).

{¶ 9} Beginning in 2011, Heuker attempted to contact Bucio on multiple occasions about the remaining money from the sale of her farmland. Bucio, however, did not return her phone calls. He also cancelled appointments that she had made with his staff. The parties stipulated that Bucio's failure to communicate with his client violated Prof.Cond.R. 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client).

{¶ 10} In August 2011, Bucio informed Heuker of his position that she was not entitled to any portion of the farmland's sale proceeds because he had accepted the land as a flat fee for representing her in the criminal case. Bucio later acknowledged, however, that he spent only about 40 hours working on Heuker's case and that if he had charged his hourly rate of $225, he would have received $9,000 for the representation. Thus, the parties stipulated that by accepting Heuker's land as a fee for representing her in the criminal matter, Bucio collected a clearly excessive fee in violation of Prof.Cond.R. 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee).

{¶ 11} In 2012, Heuker retained counsel and filed a civil lawsuit against Bucio and others for legal malpractice and related claims. However, a trial court found her claims time barred under the one-year limitations period for malpractice actions, and that decision was affirmed on appeal. *See Heuker v. Roberts, Kelly &*

*Bucio, L.L.P.*, 2013-Ohio-3987, 998 N.E.2d 827 (3d Dist.). Nonetheless, the Shelby County prosecuting attorney had heard about the situation and asked the Ohio Bureau of Criminal Investigation to investigate the transaction between Bucio and his client. That investigation eventually led to Bucio's 2016 guilty plea to one count of unauthorized use of property in violation of R.C. 2913.04(A), a fourth-degree felony. In January 2017, the Shelby County Court of Common Pleas sentenced Bucio to five years of community control and ordered him to pay a $5,000 fine. Based on his conviction, the parties stipulated that Bucio violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness).

**{¶ 12}** In February 2016, Bucio agreed to pay Heuker $97,767.02 to settle the matter. The parties calculated the restitution amount by deducting $30,000—Bucio's flat fee for representing Heuker in the pretrial stage of her criminal case pursuant to their fee agreement—from $127,767.02, which was the amount that he had received from the sale of her farmland. By January 2017, Bucio paid Heuker the entire amount, and the parties stipulated that no additional restitution is owed.

**{¶ 13}** We adopt the parties' stipulations of fact and misconduct. We also dismiss any remaining charges alleged in the complaint.

### Sanction

**{¶ 14}** When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

*Aggravating and mitigating factors*

**{¶ 15}** As aggravating factors, the board found that Bucio had a dishonest motive and engaged in multiple offenses. *See* Gov.Bar R. V(13)(B)(2) and (4). The board also noted that Heuker suffered significant financial harm as a result of Bucio's misconduct, as she was forced to initiate civil litigation in an attempt to

recoup her money, and she did not receive her portion of the sale proceeds until six years after the sale. *See* Gov.Bar R. V(13)(B)(8). In addition, the panel noted that Bucio did not express remorse or accept responsibility for his actions until 2016, after his criminal conviction.

{¶ 16} In mitigation, Bucio has no prior discipline and other penalties and sanctions have been imposed—namely, his conviction and sentence. *See* Gov.Bar R. V(13)(C)(1) and (6).

*Applicable precedent*

{¶ 17} The board found that by retaining the proceeds from the sale of Heuker's land, Bucio essentially misappropriated his client's funds. Although the presumptive sanction for such conduct is disbarment, the board concluded that an indefinite suspension was appropriate here, citing two similar misappropriation cases: *Disciplinary Counsel v. Peterson*, 135 Ohio St.3d 110, 2012-Ohio-5719, 984 N.E.2d 1035, and *Cleveland Bar Assn. v. Harris*, 96 Ohio St.3d 138, 2002-Ohio-2988, 772 N.E.2d 621.

{¶ 18} In *Peterson*, an attorney improperly entered into a business transaction with a client without obtaining the client's informed consent and then stole funds from the client. The attorney was convicted of fourth-degree felony theft and sentenced to 30 days in jail and five years of community control and ordered to pay $80,000 in restitution. Given the mitigating factors in the case— including that the attorney lacked a prior disciplinary record, made restitution, served other sanctions for the misconduct, and accepted responsibility for his actions—we found that an indefinite suspension was warranted.

{¶ 19} In *Harris*, an attorney converted money entrusted to him by an institutionalized client and failed to cooperate in the ensuing disciplinary investigation. Although we acknowledged that we typically impose the strictest discipline—permanent disbarment—in misappropriation cases, we found sufficient

mitigating factors to warrant an indefinite suspension, including his lack of prior discipline and the evidence he submitted of good character and reputation.

{¶ 20} We agree with the board that Bucio's egregious misconduct here was tantamount to misappropriation of client funds. But we also agree that similar to *Peterson* and *Harris*, sufficient mitigating factors weigh against the presumptive sanction of disbarment, including Bucio's lack of prior discipline, the imposition of other penalties for his misconduct, his restitution, and his acknowledgment, albeit belatedly, of the wrongfulness of his actions. Accordingly, we adopt the board's recommended sanction.

### Conclusion

{¶ 21} For the reasons explained above, Christopher Ramon Bucio is indefinitely suspended from the practice of law in Ohio, with no credit for time served under his interim felony suspension. He may not petition for reinstatement until he successfully completes or is released from the community-control sanction imposed as part of his criminal sentence. Costs are taxed to Bucio.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

Scott J. Drexel, Disciplinary Counsel, Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, and Karen H. Osmond, Assistant Disciplinary Counsel, for relator.

Bieser, Greer & Landis, L.L.P., and David Carr Greer; and Charles J. Kettlewell, for respondent.

_____