NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-6869

LORAIN COUNTY BAR ASSOCIATION *v.* JOHNSON.

TRUMBULL COUNTY BAR ASSOCIATION *v.* JOHNSON.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lorain Cty. Bar Assn. v. Johnson,* Slip Opinion No. 2017-Ohio-6869.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to act with reasonable diligence in representing a client, failing to cooperate in a disciplinary investigation, and of rules relating to a client trust account and the division of fees with a lawyer not in the same firm—Indefinite suspension.*

(Nos. 2014-0136 and 2014-1403—Submitted March 1, 2017—Decided July 20, 2017.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2013-062.

_____

**Per Curiam.**

{¶ 1} Respondent, Robert Lawrence Johnson, of McDonald, Ohio, Attorney Registration No. 0042439, was admitted to the practice of law in Ohio in 1989. We suspended him from the practice of law on an interim basis on March 4, 2014, based on his failure to respond to a disciplinary complaint filed against him by relator Lorain County Bar Association ("LCBA"). *Lorain Cty. Bar Assn. v. Johnson,* 138 Ohio St.3d 1244, 2014-Ohio-781, 5 N.E.3d 1283; Gov.Bar R. V(14)(B)(1). On the LCBA's motion, we remanded that case to the Board of Professional Conduct for further proceedings. After Johnson obtained counsel and responded to a default motion in a separate disciplinary case filed by the second relator, Trumbull County Bar Association ("TCBA"), the board consolidated the matters for further proceedings.

{¶ 2} Relators amended their complaints to allege additional acts of misconduct involving multiple clients. The parties entered into stipulations of fact and some misconduct, and a panel of the board conducted a hearing in which it heard testimony from Johnson, three of the clients affected by his misconduct, and a bar-association investigator.

{¶ 3} The board recommends that we indefinitely suspend Johnson from the practice of law with no credit for the time served under his interim default suspension based, in part, on findings that he neglected 11 separate client matters and that he failed to reasonably communicate with at least one client, maintain records regarding client funds in his possession, refund unearned fees on the termination of his representation, and cooperate in no fewer than 14 disciplinary investigations. No one has objected to the board's recommendation.

{¶ 4} For the reasons that follow, we accept the board's recommendation and indefinitely suspend Johnson from the practice of law in Ohio with no credit for the time served under his interim default suspension.

**Misconduct**

**I. The Second Amended LCBA Complaint**

*A. The Alice Stevanus Matter—*

*Neglect, Trust-Account, and Fee-Sharing Violations*

**{¶ 5}** In April 2012, Chase Bank sent the Office of Disciplinary Counsel two notices that Johnson's trust account contained insufficient funds to pay a $5,000 check that was presented for payment. Johnson's responses to disciplinary counsel's letters of inquiry were in some instances incomplete and in others nonexistent. Johnson disclosed, however, that he had issued the $5,000 check and two other checks, one for $28,500 and the other for $4,000, to attorney Michael J. Godles on April 17, 2012, in connection with their joint representation of Alice Stevanus. Disciplinary counsel referred the matter to the LCBA for further investigation in January 2013 because the bar association was already investigating Godles's conduct in the Stevanus matter.

**{¶ 6}** Stevanus retained Godles to pursue a personal-injury claim in April 2011 and signed a contingent-fee contract. Godles later asked Johnson, who was not a member of the same law firm, to serve as his co-counsel, but they never obtained Stevanus's written consent to Johnson's involvement or to their fee-sharing arrangement. Nor did Johnson advise Stevanus that he did not carry professional-liability insurance. Johnson and Godles ultimately settled Stevanus's claim for $65,000.

**{¶ 7}** Johnson deposited Stevanus's settlement check into his client trust account. Although two different settlement/disbursement sheets were prepared, neither Johnson nor Godles signed them.

**{¶ 8}** The first disbursement sheet shows a $65,000 settlement with disbursements of $7,500 to Stevanus and $21,500 for "Professional Fees to Attorneys" and a remaining balance of $36,000. But Johnson actually disbursed a total of $37,500 to Godles in the three checks. And despite Johnson's

representation of a $36,000 balance, a $5,000 check issued to Godles was twice returned due to a bank hold on his client trust account.

{¶ 9} The second disbursement sheet reflects a $7,500 disbursement to Stevanus, as well as a "prior disbursement" of $5,000 and a "final disbursement" of $30,281.12. Although Johnson provided copies of the bank statements for his client trust account, he failed to maintain or refused to produce receipts, canceled checks, deposit slips, ledgers, invoices, or file materials documenting his handling of Stevanus's funds.

{¶ 10} Moreover, Johnson testified that Stevanus received $7,500 from the $65,000 settlement of her claim, that he also received $7,500 for his fee, and that he distributed $37,500 to Godles (purportedly to cover his attorney fees and Stevanus's outstanding medical bills). Although Johnson testified generally that the remaining settlement proceeds went to Godles, he has never accounted for $12,500 of those funds. Nonetheless, the LCBA withdrew its request for restitution in this matter because Johnson's records were insufficient to establish the amount to which Stevanus was entitled.

{¶ 11} The board found that Johnson's conduct violated Prof.Cond.R. 1.5(c)(2) (requiring a lawyer entitled to compensation under a contingent-fee agreement to prepare a closing statement to be signed by the lawyer and the client that details the calculation of the lawyer's compensation, any costs and expenses deducted from the judgment or settlement, and any division of fees with a lawyer not in the same firm), 1.5(e) (permitting attorneys who are not in the same firm to divide fees only when certain enumerated factors—including the client's consent to the arrangement in writing after full disclosure—are present), 1.15(a)(1) (requiring a lawyer to maintain a copy of any fee agreement with each client), 1.15(a)(2) through (5) (requiring a lawyer to maintain certain records regarding funds held in a client trust account and certain bank records as well as to perform and retain a monthly reconciliation of the account), and 1.15(d) (requiring a lawyer

4

to promptly deliver funds or other property that the client is entitled to receive). We adopt these findings.

*B. The Taylor Matter—Neglect, Failure to Communicate, Flat Fee, and Alleged Dishonesty and Misrepresentation*

{¶ 12} In November 2012, Jennifer J. Taylor retained Johnson to represent her in a pending divorce and paid him a flat fee of $750, but he never had her sign a written fee agreement. Johnson entered an appearance in the proceedings and later requested an additional payment of $250 to conduct a deposition. Taylor paid the additional $250 on February 15, 2013, but Johnson never conducted a deposition in her case.

{¶ 13} Johnson attended the final divorce hearing on April 30, 2013, and the parties settled the case. They agreed that the attorney representing Taylor's husband would prepare the final divorce decree. After receiving no communication from Johnson for approximately one month, Taylor began persistently texting him regarding the status of her case, but he often failed to respond to her inquiries.

{¶ 14} On September 18, 2013, Johnson sent Taylor a copy of the decree drafted by her husband's counsel, but Taylor found that it contained numerous errors and refused to sign it. At a September 26, 2013 status conference, the parties agreed that Johnson would prepare and submit a new decree. Taylor later discovered, however, that the decree prepared by her husband's counsel had been filed and adopted by the court without her knowledge or consent on October 3, 2013.

{¶ 15} Johnson admitted that he did not respond to Taylor's repeated attempts to communicate with him about the divorce decree for at least two months. Then, at Taylor's request, he filed a postdecree motion to appoint a guardian ad litem on December 17, 2013, but no hearing was ever scheduled on that motion.

{¶ 16} After reading a newspaper article about Johnson's March 4, 2014 suspension, Taylor called the clerk of court's office and learned that Johnson had

never filed a motion to correct the divorce decree or scheduled a postdecree hearing in her case. Taylor twice requested that Johnson return her file and provide an itemized statement of her fees, but he did not comply.

{¶ 17} The board found that Johnson's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client) and 1.5(d)(3) (prohibiting a lawyer from charging a flat fee without simultaneously advising the client in writing that the client may be entitled to a refund of all or part of the fee if the lawyer does not complete the representation), and we adopt those findings of misconduct.

{¶ 18} The board also addressed an alleged violation of Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). First, the board found that Johnson affirmatively represented to Taylor that he required fees for a deposition and that a court date had been set on her postdecree motion when he had never conducted the deposition and no hearing had ever been scheduled. The board then stated, "Respondent's affirmative misrepresentations to his client constitute a violation of Prof.Cond.R. 8.4(c)." But in spite of this finding, just five paragraphs later, the board found that the LCBA had failed to prove the alleged violation by clear and convincing evidence and recommended dismissal of that count.

{¶ 19} In order to resolve the apparent contradiction between the board's findings regarding the alleged violation of Prof.Cond.R. 8.4(c), we now exercise our authority as the final arbiter of misconduct in disciplinary cases to independently evaluate the weight of the evidence. *Disciplinary Counsel v. Kelly*, 121 Ohio St.3d 39, 2009-Ohio-317, 901 N.E.2d 798, ¶ 11 (explaining that although it defers to the expertise of the board and the panel and their first-hand observation of witness testimony, the court remains free to exercise its independent judgment as to the evidentiary weight and applicable law).

**{¶ 20}** Having reviewed the record, we now find that the LCBA has failed to meet its burden of proving, by clear and convincing evidence, the facts necessary to establish a violation of Prof.Cond.R. 8.4(c). *See Disciplinary Counsel v. Jackson*, 81 Ohio St.3d 308, 310, 691 N.E.2d 262 (1998); Gov.Bar R. V(12)(I). Here, the only evidence tending to prove that Johnson lied to his client about having scheduled a postdecree hearing is Taylor's affidavit averring that Johnson sent her three text messages regarding the purported hearing—the first stating that a hearing had been scheduled for March 14, 2014, the second stating that the hearing would be rescheduled, and the third stating that the hearing had been scheduled for March 28, 2014. In contrast, Johnson testified that he told Taylor that he was *attempting to set* a hearing date and that the dates she recalled may have been proposed but were never confirmed. He also explained that the contemplated deposition became unnecessary because the parties settled the case.

**{¶ 21}** We acknowledge that Taylor's affidavit constitutes *some* evidence that Johnson engaged in dishonesty, fraud, deceit, or misrepresentation. In light of Johnson's testimony to the contrary and the absence of any opportunity for Johnson's counsel or the panel to cross-examine Taylor regarding her statements, however, we find that the LCBA failed to prove by clear and convincing evidence that Johnson violated Prof.Cond.R. 8.4(c). We hereby dismiss that alleged violation.

**{¶ 22}** In addition, we note that although the LCBA charged Johnson with failing to reasonably communicate with Taylor in violation of Prof.Cond.R. 1.4(a)(3) and (4) and the board's findings of fact plainly address Johnson's failure to respond to Taylor's communications regarding the status of her case, the board did not expressly find that he violated any provisions of Prof.Cond.R. 1.4(a) with respect to his representation of Taylor. In light of the board's findings and Johnson's admissions that he failed to communicate with Taylor as he should have after the first year of her representation and that he "failed and refused to respond"

to her communications after he had answered a text message she sent on March 13, 2014, we find that Johnson violated Prof.Cond.R. 1.4(a)(3) and (a)(4) as charged in the amended complaint.[1]

*C. The Conti and Heslop Matters—Additional Instances of Neglect and Failure to Communicate*

**{¶ 23}** In June 2011, Johnson agreed to represent Ralph Conti in a divorce. Although Conti was granted the divorce, Johnson did not forward certain original documents to his client as requested.

**{¶ 24}** In a separate matter, Tammy Heslop retained Johnson in November 2011 to represent her in a foreclosure proceeding. Johnson collected a flat fee of $500 from Heslop, but he filed only a motion for leave to plead and an answer to the foreclosure complaint. The court ultimately granted the plaintiff a decree of foreclosure as a result of Johnson's inaction.

**{¶ 25}** The board found that Johnson failed to provide Conti and Heslop copies of their legal documents or to otherwise keep them informed about the status of their legal matters in violation of Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter). The board also found that Johnson failed to communicate with Conti about the means necessary to achieve his objectives in violation of Prof.Cond.R. 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished) and failed to respond to his reasonable requests for information in violation of Prof.Cond.R. 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client). And based on Johnson's failure to complete Heslop's representation or refund her fee,

---

[1] Because the panel's dismissal of these and several other counts was not unanimous, we treat it as a recommendation. *See* Gov.Bar R. V(12)(G); *Cincinnati Bar Assn. v. Fernandez*, 147 Ohio St.3d 329, 2016-Ohio-5586, 147 Ohio St.3d 329, ¶ 13-15.

the board found that he violated Prof.Cond.R. 1.3 and 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee). We adopt the board's findings with respect to these counts.

### D. Professional-Liability Insurance and Lack of Cooperation

{¶ 26} In addition to the above-described violations, Johnson stipulated that he violated Prof.Cond.R. 1.4(c) by failing to notify Stevanus, Conti, Heslop, Taylor, and another client that he did not carry professional-liability insurance. He also stipulated that he violated Prof.Cond.R. 8.1 and former Gov.Bar R. V(4)(G)[2] (both requiring a lawyer to cooperate with disciplinary investigations) for failing to cooperate in the disciplinary investigations of each of these client matters and in an additional grievance filed by William Stevanus. We adopt these findings of fact and misconduct.

### E. Dismissal of Remaining LCBA Allegations

{¶ 27} The LCBA agreed to dismiss six additional alleged violations. The majority of the panel recommended that we dismiss those alleged violations and also that we dismiss one additional alleged violation of Prof.Cond.R. 1.3 that was not proven by clear or convincing evidence, and the board adopted that recommendation. We hereby adopt the board's recommendation and dismiss the seven remaining violations alleged in the LCBA's amended complaint.

## II. The Second Amended TCBA Complaint

{¶ 28} In a second amended complaint filed on May 13, 2015, relator TCBA charged Johnson with multiple violations of the Rules of Professional Conduct arising from his conduct in at least 12 separate legal matters involving 15 clients: Shannon Mellin and Tami Morrison, Rocky DeFrank, Francis Davis, Jamie Munroe, Kristina Ruhlman, Michael Powell, Paula Torres, Chris Jackson Sr.,

---

[2] The duty imposed on an attorney by former Gov.Bar R. V(4)(G) to cooperate in a disciplinary investigation is identical to the duty now imposed by Gov.Bar R.V(9)(G), 140 Ohio St.3d CXIX, effective January 1, 2015.

Robert and Shirley Nevels, Sherry Christner, Russell Swegan, and George and Loretta Banks.

{¶ 29} The stipulations and evidence show that Johnson accepted payments for his retainer and court costs from each client, ranging from $150 to more than $3,000, though there was insufficient evidence to establish that Swegan ever retained Johnson. In some of these cases, Johnson attended one or more hearings on behalf of his clients. Although he testified that he prepared documents in many of the cases, he admitted that he often failed to file them in court.

{¶ 30} With just two exceptions, Johnson admitted that he failed to complete the representations he undertook for the clients identified in the TCBA complaint. For example, in one case he failed to respond to a defendant's motion for judgment on the pleadings, and his client's case was dismissed by the court. And in another case, Johnson ignored his client's repeated requests for the return of his file, leaving the client to represent himself at trial without his file. He stipulated that he failed to return the unearned portion of his fees to four clients, and at the hearing, he admitted that he had not made restitution to any of the clients identified in the TCBA complaint.

{¶ 31} The parties stipulated and the board found that Johnson committed eight violations of Prof.Cond.R. 1.3, based on his lack of diligence; eight violations of Prof.Cond.R. 1.4(c), based on his failure to notify his clients that he did not carry professional-liability insurance; eight violations of Gov.Bar R. V(9)(G),[3] based on his failure to cooperate in the ensuing disciplinary investigations; and four

---

[3] The duty imposed by former Gov.Bar R. V(4)(G) to cooperate in a disciplinary investigation is identical to the duty now imposed by Gov.Bar R.V(9)(G), *see infra,* ¶ 26, fn. 2, and that duty is also comparable to the duty imposed by Prof.Cond.R. 8.1(b), which prohibits a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation. Although the TCBA's complaint charged Johnson with violations of Prof.Cond.R. 8.1(b), former Gov.Bar R. V(4)(G), or both of those rules, the parties stipulated and the board found that Johnson's conduct violated Gov.Bar V(9)(G). For purposes of this opinion, we treat these rules as functional equivalents.

violations of Prof.Cond.R. 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment). Additionally, the parties stipulated and the board found that Johnson committed one violation of Prof.Cond.R. 1.4(a)(1) (requiring a lawyer to inform the client of any decision or circumstance with respect to which the client's informed consent is required), one violation of Prof.Cond.R. 1.15(c) (requiring a lawyer to deposit into a client trust account legal fees and expenses that have been paid in advance), and one violation of Prof.Cond.R. 1.16(d) (requiring a lawyer withdrawing from representation to take steps reasonably practicable to protect a client's interest).

{¶ 32} We adopt the board's findings of fact and misconduct with respect to the TCBA complaint. We also dismiss an alleged violation of Prof.Cond.R. 1.1 that the TCBA agreed to dismiss and numerous additional alleged violations that were neither expressly addressed nor found by the board.

## Sanction

{¶ 33} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 34} As aggravating factors, the board found that Johnson acted with a dishonest and selfish motive, engaged in a pattern of misconduct that involved multiple offenses, failed to cooperate in the investigatory process, caused harm to multiple clients, and failed to make restitution. *See* Gov.Bar R. V(13)(B)(2), (3), (4), (5), (8), and (9). At the hearing, the parties stipulated that Johnson owes approximately $13,000 in restitution to 15 former clients. We also note that in his testimony, Johnson admitted that in his more than 20 years of practice, he never maintained required ledgers regarding the client funds in his possession and he rarely used his client trust account.

**{¶ 35}** As mitigating factors, Johnson and the LCBA stipulated that Johnson had no prior disciplinary record, made full and free disclosures to the board and demonstrated a cooperative attitude toward the proceedings after obtaining legal representation, and has a mental-health disorder. *See* Gov.Bar R. V(13)(C)(7). While the board acknowledged that there had been no disciplinary action taken against Johnson at the time the original grievance was filed, it noted that by the time of the panel hearing, we had imposed an interim default suspension based on his failure to respond to the initial LCBA complaint. The board also gave very little weight to the 16 character letters submitted on Johnson's behalf.

**{¶ 36}** In addition, the board found that the report of Dr. Dennis Helmuth failed to satisfy the requirements necessary to establish Johnson's diagnosed disorder as a mitigating factor. *See* Gov.Bar R. V(13)(C)(7)(a) through (d). Although Dr. Helmuth diagnosed Johnson with a mental-health disorder, he limited the duration of that diagnosis to "[w]inter and early spring of 2013-2014" and linked it to Johnson's conduct from "approximately October 2013 to mid-April 2014." *See* Gov.Bar R. V(13)(C)(7)(b).

**{¶ 37}** But Johnson's misconduct began well before his mental disorder came into being, given that the original complaints were filed with the board in November 2013 and June 2014. Furthermore, the board noted that Dr. Helmuth failed to offer an opinion regarding Johnson's ability to return to the competent, ethical, and professional practice of law. *See* Gov.Bar R. V(13)(C)(7)(d). Therefore, the board attributed no mitigating effect to Johnson's mental disorder.

**{¶ 38}** The board recommends that we indefinitely suspend Johnson with no credit for the time served under his interim default suspension, order him to make restitution to the clients as stipulated by the parties and reimburse the Lawyers' Fund for Client Protection for any payments made to his clients, and impose conditions upon any potential reinstatement to the practice of law. In support of that sanction, the board cited several cases, including *Disciplinary*

*Counsel v. Rammelsberg*, 143 Ohio St.3d 381, 2015-Ohio-2024, 38 N.E.3d 856 (imposing an indefinite suspension with no credit for time served under an interim default suspension on an attorney who twice overdrew her client trust account, failed to maintain required records regarding client funds in her possession, and failed to cooperate in the ensuing disciplinary investigation).

**{¶ 39}** We generally impose indefinite suspensions on attorneys who neglect client matters and then fail to cooperate in the ensuing disciplinary investigations. *Mahoning Cty. Bar Assn. v. DiMartino*, 145 Ohio St.3d 391, 2016-Ohio-536, 49 N.E.3d 1280, ¶ 14. We have found that sanction to be appropriate even when an attorney has engaged in additional acts of misconduct. *See, e.g.*, *Cleveland Metro. Bar Assn. v. Gottehrer*, 124 Ohio St.3d 519, 2010-Ohio-929, 924 N.E.2d 825 (indefinitely suspending an attorney who neglected client matters, failed to promptly comply with reasonable client requests for information, made agreements for, charged, or collected illegal or clearly excessive fees, failed to timely deliver funds or other property to a client, and failed to cooperate in the resulting disciplinary investigation); *Cincinnati Bar Assn. v. Hoskins*, __ Ohio St.3d __, 2016-Ohio-4576, __ N.E.3d __ (indefinitely suspending an attorney who neglected client matters, failed to reasonably communicate with his clients, failed to provide competent representation to a client, failed to deliver funds that a client was entitled to receive, improperly paid referral fees to a nonlawyer, and failed to cooperate in the ensuing disciplinary investigations).

**{¶ 40}** Here, in addition to engaging in a pattern of neglect and noncooperation, Johnson has been found to have failed to reasonably communicate with several clients. He has failed to maintain required records of client funds in his possession during his entire 25 years of practice, to deliver funds that a client was entitled to receive, to return unearned fees upon the termination of his representation, and to make required disclosures to one client about flat fees and to another client regarding a fee-sharing agreement with an attorney outside his firm.

He also failed to notify multiple clients that he did not carry professional-liability insurance. In light of his significant pattern of misconduct, the applicable aggravating and mitigating factors, and the sanctions we have imposed for comparable misconduct, we find that an indefinite suspension from the practice of law with no credit for the time served under the interim default suspension is the appropriate sanction in this case.

{¶ 41} Accordingly, Robert Lawrence Johnson is indefinitely suspended from the practice of law in Ohio with no credit for the time served under his interim default suspension. He is also ordered to make restitution to his former clients in the following stipulated amounts: $3,000 to Tammy Heslop, $750 to Jennifer Taylor, $620 to Shannon Mellin, $620 to Tami Morrison, $625 to Rocky DeFrank, $250 to Francis Davis, $3,950 to Jamie Munroe, $650 to Kristina Ruhlman, $400 to Michael Powell, $150 to Paula Torres, $750 to Chris Jackson Sr., $500 to Robert Nevels, $450 to Sherry Christner, and $625 to George and Loretta Banks. In addition to the requirements set forth in Gov.Bar R. V(25)(D)(1) for reinstatement, Johnson shall (1) submit to a mental-health evaluation conducted by the Ohio Lawyers Assistance Program ("OLAP"), (2) enter into an OLAP contract, the duration and terms of which shall be determined by OLAP, and (3) comply with all recommendations of OLAP and his treating professionals. Costs are taxed to Johnson.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

Richard Mellott Jr., for relator Lorain County Bar Association.

Terry A. Swauger, for relator Trumbull County Bar Association.

John B. Juhasz Jr., for respondent.

_____